OPINION OF THE COURT
Jasen, J.
On this appeal, we are called upon to define the scope of the duty owed by a proprietor of a baseball field to the spectators attending its games. The specific question presented is whether such an owner, having provided protective screening for the area behind home plate, is liable in negligence for the injuries sustained by a spectator as a result of being struck by a foul ball while standing in an unscreened section of the field. This case does not involve the “culpable conduct” (CPLR 1411) — be it assumption of risk or contributory negligence — of a spectator injured in the course of a baseball game.
In the early afternoon of April 14, 1976, plaintiff attended a high school baseball game that was being played on a field owned and maintained by defendant Glens Falls *328 City School District. The field was equipped with a backstop 24 feet high and 50 feet wide. This backstop was located 60 feet behind home plate and was positioned in front of bleachers that could seat approximately 120 adults. There was additional standing room behind the backstop as well. Two chain link fences, three feet in height, ran from each end of the backstop along the base lines to a distance approximately 60 feet behind first and third base.
Plaintiff arrived while the game was in progress and elected to view the contest from a position behind the three-foot fence along the third base line, approximately 10 to 15 feet from the end of the backstop and 60 feet from home plate. As there were no seating facilities for spectators along the base lines, plaintiff had to stand in order to watch the game. At the time, other spectators were also standing along the base lines behind the three-foot fence. There was, however, no proof that the screened bleachers behind home plate were filled or that plaintiff was prevented from watching the game from behind the backstop. Approximately 10 minutes after arriving at'the baseball field, plaintiff was struck in the eye by a sharply hit foul ball, causing her serious and permanent injury.
The present action was then commenced by the plaintiff against the defendant school district. Alleging that the school district was negligent in failing to provide safe and proper screening devices along the base lines of its field, plaintiff sought judgment against the school district in the sum of $250,000. After trial, the jury returned a verdict in plaintiff’s favor, assessing damages in the amount of $100,000 and apportioning fault at 65% to the school district and 35% to plaintiff.
On appeal, a divided Appellate Division affirmed the judgment rendered in plaintiff’s favor, one Justice concurring in result and two Justices dissenting. The majority held that there was no error of law which warranted disturbing the jury’s verdict. The dissenters were of the view that, as a matter of law, there was no showing of any negligence on the school district’s part. According to the dissent, “ [h] aving adequately screened the area of its ball park behind home plate, the defendant fulfilled its duty to *329 the plaintiff and cannot be held in negligence when she herself selected a position that was outside the area screened.” (75 AD2d, p 243.) We agree.
Cases involving the liability of an owner of a baseball field for the injuries sustained by those attending its games are not altogether foreign to the courts of this State. Indeed, the doctrine of assumption of risk has had extensive application in a number of cases involving spectators struck by misguided baseballs. (E.g., O’Bryan v O’Connor, 59 AD2d 219; Dillard v Little League Baseball, 55 AD2d 477; Kozera v Town of Hamburg, 40 AD2d 934; Barker v Topping, 15 AD2d 193; Zeitz v Cooperstown Baseball Centennial, 31 Misc 2d 142; cf. Cadieux v Board of Educ., 25 AD2d 579; Ingersoll v Onondaga Hockey Club, 245 App Div 137.) As was aptly summarized by Chief Judge Cardozo, the spectator at a sporting event, no less than the participant, “accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball * * * The timorous may stay at home.” (Murphy v Steeplechase Amusement Co., 250 NY 479, 482-483.) However, because these cases arose prior to the adoption of the comparative negligence rule in this State (CPLR 1411), application of the assumption of risk doctrine served as a complete bar to a plaintiff’s cause of action without regard to the degree of care exercised by the owner of the ball park. As a result, aside from two lower court decisions (Adonnino v Village of Mount Morris, 171 Misc 383; Blackball v Capital Dist. Baseball Assn., 154 Misc 640, affd 157 Misc 801), there is no case law in this State which defines the duty of care owed by a proprietor of a baseball field to its spectators. We now define that duty.
At the outset, it should be stated that an owner of a baseball field is not an insurer of the safety of its spectators. Rather, like any other owner or occupier of land, it is only under a duty to exercise “reasonable care under the circumstances” to prevent injury to those who come to watch the games played on its field. (Basso v Miller, 40 NY2d 233; Scurti v City of New York, 40 NY2d 433.) The perils *330 of the game of baseball, however, are not so imminent that due care on the part of the owner requires that the entire playing field be screened. Indeed, many spectators prefer to sit where their view of the game is unobstructed by fences or protective netting and the proprietor of a ball park has a legitimate interest in catering to these desires. Thus, the critical question becomes what amount of screening must be provided by an owner of a baseball field before it will be found to have discharged its duty of care to its spectators.
Other jurisdictions addressing this question have adopted various standards in defining the duty of a ball park proprietor to protect its spectators from stray balls. Some courts have held that an owner merely has a duty to screen, such seats as are adequate to provide its spectators with an opportunity to sit in a protected area if they so desire. (E. g., Crane v Kansas City Baseball & Exhibition Co., 168 Mo App 301; McNiel v Fort Worth Baseball Club, 268 SW2d 244 [Tex].) Other courts have stated that a proprietor of a baseball field need only screen as many seats as may reasonably be expected to be applied for on an ordinary occasion by those desiring such protection. (Quinn v Recreation Park Assn., 3 Cal 2d 725; Leek v Tacoma Baseball Club, 38 Wn 2d 362.) Most courts, however, have adopted a two-prong standard in defining the scope of an owner’s duty to provide protective screening for its patrons. Under the majority rule, the owner must screen the most dangerous section of the field — the area behind home plate— and the screening that is provided must be sufficient for those spectators who may be reasonably anticipated to desire protected seats on an ordinary occasion. (E.g., Maytnier v Rush, 80 Ill App 2d 336; Brisson v Minneapolis Baseball & Athletic Assn., 185 Minn 507; Erickson v Lexington Baseball Club, 233 NC 627; see, generally, Liability to Spectator at Baseball Game Who Is Hit by Ball or Injured As Result of Other Hazards of Game, Ann., 91 ALR3d 24.) We believe this to be the better rule and adopt this definition of the duty owed by an owner of a baseball field to provide protective screening for its spectators.
*331 We hold that, in the exercise of reasonable care, the proprietor of a ball park need only provide screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest. Moreover, such screening must be of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game. In so holding, we merely recognize the practical realities of this sporting event. As mentioned earlier, many spectators attending such exhibitions desire to watch the contest taking place on the playing field without having their view obstructed or obscured by a fence or a protective net. In ministering to these desires, while at the same time providing adequate protection in the most dangerous area of the field for those spectators who wish to avail themselves of it, a proprietor fulfills its duty of reasonable care under such circumstances.
This is not to say that, by adequately screening the area of the field where the incidence of foul balls is the greatest, the risks inherent in viewing the game are completely eliminated. Rather, even after the exercise of reasonable care, some risk of being struck by a ball will continue to exist. Moreover, contrary to the supposition of the dissent, we do not attempt to prescribe precisely what, as a matter of law, are the required dimensions of a baseball field backstop. Nor do we suggest that where the adequacy of the screening in terms of protecting the area behind home plate properly is put in issue, the case should not be submitted to the jury. We merely hold that where a proprietor of a ball park furnishes screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest and that screening is of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game, the proprietor fulfills the duty of care imposed by law and, therefore, cannot be liable in negligence. Indeed, to adopt the view urged by the dissent would mean that every spectator injured by a foul ball, no matter where he is seated or standing in the ball park, would have an absolute right to go to the jury on every claim of negligence, regardless of the owner’s efforts to
*332 provide reasonable protection and despite the spectator’s failure to utilize the protection made available.*
In this case, it is undisputed that the school district equipped its field with a backstop which was 24 feet high and 50 feet wide. Plaintiff presented no evidence that this backstop was inadequate in terms of providing protection for the area behind home plate where there was a substantial likelihood of spectators being struck by misguided balls or that there was an insufficient number of screened seats for those who might reasonably be expected to desire such protection. Under these circumstances, having provided adequate protection for those spectators seated, or standing, in the area behind home plate, liability may not be imposed on the school district for failing to provide additional screening along the baselines of its field where the risk of being struck by a stray ball was considerably less. (Accord Cates v Cincinnati Exhibition Co., 215 NC 64; Curtis v Portland Baseball Club, 130 Ore 93; see, also, Leek v Tacoma Baseball Club, 38 Wn 2d 262, supra.)
As the dissent correctly notes, what constitutes reasonable care under the circumstances ordinarily is a question for the jury. This is not to say, however, that in every case involving a landowner’s liability in negligence the question whether reasonable care was exercised must be determined by the jury. As we' have only recently stated, “before it becomes appropriate for the jury to consider * * * such questions, the court, as it would in the usual negligence action, must make the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made out a case sufficient in law to support a favorable jury verdict. Only in those cases where there arises a real question as to the landowner’s negligence should the jury be permitted to proceed. In all others, where proof of any essential element falls short, the case should go no further.” (Basso v Miller, 40 NY2d 233,241-242, supra; see, also, Quinlan v Cecchini, 41 NY2d 686, 689.)
*333 In short, a court always is required to undertake an initial evaluation of the evidence to determine whether the plaintiff has established the elements necessary to a cause of action in negligence, to wit: (1) the existence of a duty on defendant’s part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof. (See Prosser, Torts [4th ed], § 30, p 143.) In this regard, this court, on more than one occasion, has held that a defendant fulfilled its duty of care notwithstanding a jury verdict to the contrary. (E.g., Pulka v Edelman, 40 NY2d 781; Jenks v McGranaghan, 30 NY2d 475 ; Kimbar v Estis, 1 NY2d 399; Thompson v Board of Educ., 280 NY 92; Peterson v City of New York, 267 NY 204; Maher.v Madison Sq. Garden Corp., 242 NY 506; see, also, Curcio v City of New York, 275 NY 20.) Similarly, on the record before us and the undisputed facts of this case, the school district fulfilled its duty of reasonable care to plaintiff as a matter of law and, therefore, no question of negligence remained for the jury’s consideration.
Finally, in view of our holding, we need not reach and, therefore, do not consider the correctness of the trial court’s charge to the jury with respect to the applicability of the doctrine of assumption of risk under this State’s comparative negligence statute. (See CPLR 1411.)
Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.

 The dissent acknowledges that not “every ease of alleged negligence by the proprietor of a baseball field must go to the jury.” (At p 334 [Cooke, Ch. J., dissenting].) However, no guidance whatsoever is offered for determining which cases should be decided by the court as a matter of law and which should be submitted to the jury.