OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
Plaintiff, a 14-year-old girl, was watching a professional baseball game at Shea Stadium from a box seat behind first base, separated from the playing field only by a three-foot fence. At a moment when her attention was diverted from the game, she was struck by a sharply hit foul ball and sustained serious injuries including the loss of vision in one eye. Plaintiff brought this negligence action against the City of New York (owner of Shea Stadium) and the Metropolitan Baseball Club, Inc. (its lessee). The Appellate Division, in reversing Special Term, granted defendants’ motions for summary judgment and dismissed the complaint. We now affirm.
Claims involving injuries sustained by spectators from misdirected baseballs were traditionally decided — and dismissed — on the ground of assumption of risk. However, with the enactment of CPLR 1411 in 1975, the absolute defense was no longer applicable and it became necessary to define the duty of care owed by a proprietor of a baseball field to its spectators. This we did, not even three years ago, in Akins v Glens Falls City School Dist. (53 NY2d 325, 331): “[W]here a proprietor of a ball park furnishes screening for the area of the field behind home plate where the *998 danger of being struck by a ball is greatest and that screening is of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game, the proprietor fulfills the duty of care imposed by law and, therefore, cannot be liable in negligence.” Here, there has been no showing by plaintiff that (1) defendants failed to erect a screen behind home plate providing adequate protection in that area, and (2) there are not sufficient seats behind the screen to accommodate as many spectators as reasonably may be expected to desire such seating. No evidence that the screen was inadequate was presented, and it is undisputed that there were unoccupied seats behind the screen at Shea on the day plaintiff was injured.
Plaintiff nonetheless argues that Akins should not bar her cause of action because she was given an assigned seat in an unscreened area in which there had been prior spectator injuries, and that a jury question is presented “where the inadequacy of the screening at the point of injury is put in issue.” This is a mischaracterization of Akins, where we held only that a jury question may be presented “where the adequacy of the screening in terms of protecting the area behind home plate properly is put in issue.” (Akins v Glens Falls City School Dist., 53 NY2d 325, 331, supra.) The rule suggested by plaintiff would require a baseball field proprietor to operate as an insurer of spectators unless there was a protective screen shielding every seat. We held in Akins that a proprietor should be allowed to satisfy the desires of the many spectators who prefer to view the game from a seat unobstructed by fences or protective screening. No sound reason has been shown why the rule of policy set forth in Akins should be changed.
Chief Judge Cooke (dissenting). When this court, in Akins v Glens Falls City School Dist. (53 NY2d 325), established a per se rule governing the duty of care owed by a baseball field proprietor, the dissent found the creation of such rules to be without foundation in the jurisprudence of landowner liability followed by this court since Basso v Miller (40 NY2d 233) was decided and since a system of comparative negligence (see CPLR 1411) was enacted by the Legislature (see Akins v Glens Falls City *999 School Dist., supra, at pp 333-337 [Cooke, Ch. J., dissenting]). In this appeal, even the per se rule is applied without consideration of its underlying rationale. Therefore, I respectfully dissent.
In Akins, the court considered whether the owner of a lot used as a baseball field by a high school team breached any duty owed a spectator who, standing in foul territory along the third-base line, was struck by a line-drive foul ball. Reasoning that “an owner of a baseball field is not an insurer of the safety of its spectators” (at p 329), and that “many spectators prefer to sit where their view of the game is unobstructed by fences or protective netting” (at p 330), the court announced a two-part rule that governs the duty a ball park proprietor owes spectators. It was held, and has been restated in this case, that when “a proprietor of a ball park furnishes screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest and that screening is of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game, the proprietor fulfills the duty of care imposed by law” (53 NY2d, at pp 329-331).
Presumably, the rationale underlying this rule was to insulate baseball field owners from liability while allowing a maximum number of seats with unobstructed views by permitting spectators to recover for their injuries only if they were sitting in an area of the grandstands which exposed them to an extraordinary risk of injury and for which no screening or other protection was provided. Those spectators who are injured when sitting in some other area will not be permitted any recovery so long as there exists at least one seat unfilled in a protected area. It is presumed under the Akins rule that the spectator has no one but himself or herself to blame for the injury because, if truly concerned with the risk, he or she could have moved to the one unoccupied seat.
Applying these principles to the case at bar indicates that the complaint should not have been dismissed. Here, plaintiff was sitting in a first-row box seat directly behind first base. All that separated her from the playing field was a three-foot high fence. It is clear that, if the duty of the *1000 proprietor to provide protective screening depends on the presence of an extraordinary risk of injury to a fan caused by a foul ball or a wild throw, no meaningful legal distinction can be drawn between the fan protected by screening but sitting at the perimeter of the screen and the fan sitting in the front row, 20, 30 or even 90 feet up the baseline. It cannot be said as a matter of law that plaintiff here was exposed to any less of a risk than that experienced by a spectator sitting 20 rows behind home plate, where a protective screen is required.
If the court’s concern is to provide all fans with an unobstructed view of the game, an inquiry should be made as to the extent of the obstruction if fans in the first rows were protected from line drives. Similarly, it cannot be assumed that, if informed of an unusually high incidence of injuries to spectators in a particular seating area, all or most fans would opt for no increased protection rather than an accommodation of the interests in having a clear view and safety from foul balls.
In this case, limiting the area to be protected to that area behind home plate does nothing more than to artificially limit the liability of ball park owners. Moreover, it is difficult to understand what policy, other than the one just mentioned, is advanced in this case by exculpating the defendants from liability merely because one or more seats were unoccupied in the protected area behind home plate. This concept may be relevant in the setting of a ball field located in a sandlot where all who desire to assemble around a chain-link backstop may do so. It is utterly out of place when the setting is a major sports stadium where, rather than a general admission arrangement, all seats are individually assigned or allocated to a specific area. Certainly, there is no policy at a major league stadium that would permit any and all spectators sitting in areas other than behind home plate, at any point in the game, to switch seats to those located in the “choice” area behind home plate. But surely, under the Akins doctrine, the management would have to provide such seats or be exposed to liability in the event that the fan is injured. The only alternative is to hold that a fan who is unable to secure a seat behind home plate must go home or fully *1001 assume responsibility for any consequences of remaining at the ball park no matter how unreasonable the risk of injury.
Because I cannot subscribe to such a rule and because I believe that the plaintiff should be permitted her day in court to show that, under the circumstances, reasonable care dictated that defendants should have provided more protection to spectators sitting where plaintiff was injured, I would reverse the order of the Appellate Division and reinstate the complaint.
Judges Jasen, Jones, Wachtler, Simons and Kaye concur; Chief Judge Cooke dissents and votes to reverse in an opinion in which Judge Meyer concurs.
Order affirmed, with costs, in a memorandum.