ELLIOT MADDOX et al., Respondents, v CITY OF NEW YORK et al., Defendants and Third-Party Plaintiffs-Appellants. D. REINER, INC., Third-Party Defendant-Appellant; NEW YORK YANKEES, Third-Party Defendant and Fourth-Party Plaintiff-Respondent; AMERICAN LEAGUE OF PROFESSIONAL BASEBALL CLUBS, Fourth-Party Defendant-Appellant. (Action No. 1.)

ELLIOT MADDOX, Respondent, v THOMAS CRIMMINS CONTRACTING COMPANY, Respondent, and U. R. S. MADIGAN-PRAEGER, INC., Appellant. (Action No. 2.)

Second Department, April 1, 1985

## APPEARANCES OF COUNSEL

*Frederick A. O. Schwarz, Jr., Corporation Counsel* (*Leonard Koerner, June A. Witterschein* and *Marvin R. Kwartler* of counsel), for City of New York, defendant and third-party plaintiff-appellant.

*Burke, Curry, Hammill & O'Brien* (*Marshall D. Sweetbaum* of counsel), for Metropolitan Baseball Club, Inc., defendant and third-party plaintiff-appellant.

*Newman & Schlau, P. C.* (*Philip Schlau, David T. Fowler* and *Anthony J. Briguglio* of counsel), for D. Reiner, Inc., third-party defendant-appellant.

*Ahmuty, Demers & McManus* (*Michael J. Rabus* of counsel), for fourth-party defendant-appellant.

*Wilson, Elser, Edelman & Dicker* (*Thomas W. Hyland, James L. Fischer* and *John H. Somoza* of counsel), for U. R. S. Madigan-Praeger, Inc., defendant-appellant.

*Lipsig, Sullivan & Liapakis, P. C.* (*Harry H. Lipsig, Pamela Anagnos Liapakis, Robert Gray Sullivan* and *Cyrus M. Diamond* of counsel), for Elliot Maddox and another, plaintiffs-respondents.

*Pizzitola & Inzerillo* (*Robert F. Saunderson* on the brief), for New York Yankees, third-party defendant and fourth-party plaintiff-respondent.

*John J. Wrenn* (*Joanne Redden* of counsel), for Thomas Crimmins Contracting Company, respondent.

**OPINION OF THE COURT**

Per Curiam.

These actions stem from an incident which occurred on June 13, 1975, when Elliot Maddox, centerfielder for the New York Yankees, slipped and fell while fielding a ball during the ninth inning of a nighttime game against the Chicago White Sox; at the time the Yankees were playing at Shea Stadium since Yankee Stadium was undergoing extensive renovation. Thereafter, plaintiffs brought suit against various defendants, including the City of New York, Shea Stadium and the Metropolitan Baseball Club, alleging, *inter alia,* that they were negligent in the ownership, maintenance, design and construction of the stadium and that their negligence was the cause of the injuries he sustained. Additional parties were impleaded and sundry cross claims were instituted.

At an examination before trial, plaintiff Elliot Maddox (Maddox) said that after he chased and caught up with the ball in right centerfield and while he was in the process of throwing the ball back into the infield, his "left foot hit I guess it was a wet spot and took off" and his "right foot was stuck in the water, a mud puddle and wouldn't move and therefore, my right knee buckled". Maddox admitted that a game scheduled for the night before the accident had been canceled because of the weather and poor field conditions. He further admitted that earlier in the game in question he had observed the centerfield to be "awfully wet" with "some mud" and had even noticed "some standing water" above the grass line when he "went over after a fly ball once into right center". Maddox also stated that he had previously played on a wet field. Although Maddox claimed to have informed an unidentified grounds crew member of the aforementioned condition, he did not contend that he had requested not to play or to send in a replacement.

Subsequent to this deposition, various defending parties moved for summary judgment on the grounds of assumption of risk and contributory negligence. While recognizing that "a finding of either assumption of the risk or contributory negligence would completely bar plaintiffs' recovery inasmuch as his cause of action accrued prior to September 1, 1975. (Cf. CPLR 1411, 1413.)", Special Term went on to distinguish a long line of cases involving athletes and assumption of risk on the ground that they "involved amateur participants in recreational sporting events" (121 Misc 2d 358, 359, 360). The court concluded

that Maddox was "carrying out his assigned duties * * * [and] acting within the confines of a superior's instructions" and that it was a question of fact whether he acted reasonably (121 Misc 2d, at p 361). We cannot agree and reverse, and grant summary judgment against plaintiffs.

It has long been established in this State that participants in athletic events assume the risk of injury normally associated with the sport (*see, e.g., Scaduto v State of New York,* 86 AD2d 682, *affd* 56 NY2d 762 *on opn at App Div* [baseball player assumes dangers of game, including possibility of falling while in pursuit of ball]; *Passantino v Board of Educ.,* 41 NY2d 1022; *Curcio v City of New York,* 275 NY 20; *Murphy v Steeplechase Amusement Co.,* 250 NY 479, 482 [Cardozo, Ch.J.] [participant in sport accepts dangers that are inherent in it so far as they are obvious and necessary]; *Dillard v Little League Baseball,* 55 AD2d 477, *lv denied* 42 NY2d 801; *Diderou v Pinecrest Dunes,* 34 AD2d 672). Although, as Special Term noted, these cases essentially deal with amateur sports, we find no reason in the case at bar to depart from the stated rule.

In his examination before trial, Maddox admitted that he knew centerfield and right centerfield to be wet, that he continued to play ball in spite of this awareness and that he sustained injury after falling on a wet spot in right centerfield. Here, where the danger of falling on the wet playing field was obvious, it makes no sense to relieve plaintiffs from the effects of the doctrine of assumption of risk merely because Maddox was a professional, and not an amateur, player (*cf. Davidoff v Metropolitan Baseball Club,* 92 AD2d 461, *affd* 61 NY2d 996 [standard of care imposed on proprietor of professional playing field not different from that imposed on proprietor of high school field]; *Heldman v Uniroyal, Inc.,* 53 Ohio App 2d 21, 371 NE2d 557 [assumption of risk applicable to professional tennis player]; *Santiago v Clark,* 444 F Supp 1077 [assumption of risk applicable to professional jockey]). To do so would be to hold a seasoned professional who is handsomely paid for his endeavors to a lower standard of care and place him in a more advantageous position than a less-seasoned amateur who receives no remuneration whatsoever. Simply stated, as long as there are, as here, open stadiums, natural grass fields, and rain, playing on an open wet field is part of the game of baseball, both for an amateur and a professional athlete. As much as one may sympathize with Maddox, the fact is that there is no cogent reason for holding assumption of risk inapplicable at bar and since the action

accrued prior to September 1, 1975, as Special Term noted, that doctrine completely bars recovery.[1]

In an effort to avoid being called out at first base, however, Maddox argues that the assumption of risk doctrine is inapplicable at bar since his employer violated a "non-delegable duty with respect to the furnishing of a safe place to work", and in any event, his superiors forced him "to either work under unsafe conditions or abandon his work". We find these arguments unpersuasive.

It is quite true that a defense of assumption of risk (or contributory negligence) is unavailable to an employer who violates his statutory duty to supply an employee with a safe place to work (Labor Law § 200; *Fitzwater v Warren,* 206 NY 355; *France v Abstract Title Div.,* 50 AD2d 711). Nevertheless, to avail himself of a statute's protection, a plaintiff must demonstrate that he is within the class of persons the statute was designed to protect (*see, Moragne v States Mar. Lines,* 398 US 375; *McEvoy v City of New York,* 266 App Div 445, 449, *affd* 292 NY 654).

The applicable statutory provision at bar, Labor Law § 200, has its genesis in the Labor Law of 1909 (L 1909, ch 36, §§ 81, 19, as amended by L 1919, ch 545; Labor Law former § 20-b, added by L 1913, ch 145; *see,* Historical Note, McKinney's Cons Laws of NY, Book 30, Labor Law § 200, p 142). The two former sections are entitled, respectively, "Protection of employees operating machinery" and "Inspection of scaffolding, ropes, blocks, pulleys and tackles", while the latter section, entitled "Protection of employees", provides in pertinent part that "[a]ll factories, factory buildings, mercantile establishments and other places to which this chapter is applicable, shall be so constructed, equipped, arranged, operated and conducted in all respects as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein." Clearly the purpose of these provisions was to protect a worker engaged in industry, and there is nothing in the subsequent amendments to these provisions or the legislative history that evinces an intent on the part of the Legislature to expand the class of

---

1. When the Legislature enacted the comparative negligence statute (CPLR 1411), effective September 1, 1975, it abolished the doctrine of assumption of risk and contributory negligence as absolute bars to a plaintiff's recovery. Currently, assumption of risk and contributory negligence are termed "culpable conduct" and, if proven, operate only to proportionately reduce a plaintiff's recovery (CPLR 1411).

protected individuals to include baseball players (*see*, L 1962, ch 450; Governor's memorandum of approval, 1962 McKinney's Session Laws of NY, at 3633; 1962 NY Legis Ann, at 217-18, 346; L 1964, ch 370; 1964 NY Legis Ann, at 391-92). Indeed, the language of present-day section 200 would suggest precisely the opposite.[2]

■ Initially, it bears noting that Labor Law § 200 (1) does not expand coverage to workplaces beyond those enumerated in the predecessor section 20-b, cited above, but simply continues coverage to "[a]ll places to which this chapter applies". Furthermore, language added to subdivision (1) in 1962 ("[a]ll machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection") suggests a continuing legislative concern for manual workers (L 1962, ch 450). Finally, the heading of section 200, a factor to be considered when interpreting the meaning of a statute (McKinney's Cons Laws of NY, Book 1, Statutes § 123), is entitled "General duty to protect the health and safety of employees; enforcement," and the statute defines an "[e]mployee" as "a mechanic, workingman or laborer working for another for hire" (Labor Law § 2 [5]). Engaged as he was in the "national pastime" (*see, Flood v Kuhn,* 407 US 258, 264, 266), Maddox can hardly be characterized as a mechanic, working person or laborer. Accordingly, from all indications, Maddox does not fall within the protected class of individuals, and the remedy, if any is indicated, is for legislative, not judicial action (*see, Alver v Duarte,* 80 AD2d 182, 183; *Matter of Republic Steel Corp. v New York State Dept. of Labor,* 75 AD2d 658, 659; *Yearke v Zarcone,* 57 AD2d 457, 460, *lv denied* 43 NY2d 643).[3]

Even assuming, arguendo, that Maddox was within the class of protected individuals, he still could not invoke the protection of the statute. Although plaintiffs' complaints (each verified by

---

**2.** Labor Law § 200 (1) reads: "1. All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section."

**3.** It is also worthy of note that although nothing in section 200 evinces a legislative intent to embrace baseball players, the Legislature has elsewhere afforded specific protection to skiers (Labor Law art 26, as added by L 1978, ch 338) and aerial performers (Labor Law former § 202-a, as added by L 1952, ch 116, now covered by Arts and Cultural Affairs Law § 37.09), but not baseball players.

an attorney) refer to defendants' failure, *inter alia,* to provide a safe workplace and properly construct, design and maintain the stadium, their motion papers fail to substantiate any fault on the part of Maddox' employer — a requisite to the invocation of section 200 (*see, Lagzdins v United Welfare Fund,* 77 AD2d 585, 586) — which resulted in the wet condition of the playing field. We point out that defendants' motions were motions for summary judgment and it was incumbent upon Maddox to come forward with evidence that the accident resulted from defendants' breach of a duty to provide a workplace that was "so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein" (Labor Law § 200 [1]) and not simply from the elements or other risks normally associated with the sport (*see,* CPLR 3212 [b]; *Zuckerman v City of New York,* 49 NY2d 557; *Great Neck Car Care Center v Artpat Auto Repair Corp.,* 107 AD2d 658; *Gibbons v Hantman,* 58 AD2d 108, *affd* 43 NY2d 941 *on opn at App Div*). This, plaintiffs failed to do.

Plaintiffs' second argument must also fail for lack of proof. It is indeed true, as Special Term noted, that continuation on a job after being directed by a superior to proceed under circumstances recognized as dangerous does not constitute assumption of the risk as a matter of law (*see, Broderick v Cauldwell-Wingate Co.,* 301 NY 182; *Adler v Shell Transp. Corp.,* 26 AD2d 625). Had Maddox been ordered to continue playing ball after informing his superiors of a dangerous condition, the results at bar might well have been different. The fact is, however, that there is not a scintilla of evidence in the record that Maddox was directed by a superior to continue playing after making known the field conditions or that he even requested to be relieved from playing. In fact, he merely contended in papers submitted at nisi prius that he informed an unidentified grounds crew member (or members) of the condition, and that he had previously commented to the team manager "a couple of times * * * if the field was wet". Hence, on these motions for summary judgment, the proof offered by plaintiffs was insufficient to create a genuine issue of fact as to Maddox' assumption of the risk and Special Term erred in denying the motions, incorrectly inferring (121 Misc 2d 358, 361, *supra*) that Maddox "was acting within the confines of a superior's instructions" (*see, Zuckerman v City of New York, supra; Gibbons v Hantman, supra*).

Finally, we need but note that we are not precluded from granting summary judgment to all defending parties because

not all of them filed a timely notice of appeal (*see, Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 110-111), and that any cross claim or derivative claim for loss of consortium must fall once the primary claim of negligence fails (*see, Balestrero v Prudential Ins. Co.,* 283 App Div 794, *affd* 307 NY 709). The appeals from the two related discovery orders should be dismissed as academic in view of our granting of summary judgment (*see, Leiserson v Mabro Intl.,* 34 AD2d 926).

We pass on no other issues.

TITONE, J. P., MANGANO, GIBBONS and O'CONNOR, JJ., concur.

Order of the Supreme Court, Queens County, dated November 17, 1983, reversed, on the law, without costs or disbursements, motion and cross motions for summary judgment granted, and plaintiffs' complaints, and all third-party claims and cross claims dismissed.

Appeals from two orders of the same court dated March 8, 1984 and March 20, 1984, respectively, dismissed as academic, without costs or disbursements, in light of our determination with respect to the order dated November 17, 1983.