OPINION OF THE COURT
Gerard E. Delaney, J.
In substance, this is a sports (baseball) spectator injury matter wherein defendant player and baseball league have been sued in negligence by plaintiff who was hit by a wild throw of a softball during a pregame warm-up practice. Defendants move for summary judgment.
Akins v Glens Falls City School Dist. (53 NY2d 325) defined the duty of care of the owner of a baseball field following the enactment of CPLR 1411 and the institution of comparative negligence in New York State. However, the instant matter is one of first impression, vis-á-vis the player/league and the injured spectator. For reasons discussed more fully infra, the court finds, under the circumstances and facts presented, that defendants violated no duty of care to plaintiffs as a matter of law. Summary judgment is granted and the complaint is dismissed under the policy and law as stated in Akins. CPLR 1411 and "culpable conduct” are not relevant to such determination.
*402 On the 29th day of April 1984, plaintiff Morvin R. Clark was struck in the left eye by a ball thrown by the defendant, Alexsis Delgado, who was playing ball as part of the Goshen Sunday Morning Softball League, the codefendant in this matter.
An examination of the deposition before trial reveals that the following matters are not in dispute: at approximately 9:00 or 9:30 on the morning of April 29, 1984, plaintiff Morvin R. Clark brought his adult son to the Erie Street baseball field in Goshen, New York, to introduce him to several players. The Erie Street baseball field is situated so that its third base line runs parallel to an adjacent sidewalk. There is a backstop upon such field which is at least 10 feet high by 20 feet in width and a further fence extends from the batter’s left side of the backstop past the dugout, parallel to the sidewalk, towards the left field area. There are bleachers located behind the backstop area and at the time of the accident in question there were vacancies behind such backstop in the bleachers.
Upon arrival at the field, plaintiff Clark was located approximately in the area of third base and was outside the perimeter fence, leaning on it and over it and talking to several people outside the fence. He was not behind the backstop fencing at the time of injury.
Immediately prior to Mr. Clark being hit by a softball, codefendant, Alexsis Delgado, was having a warm-up catch with another player, a member of the Goshen Sunday Morning Softball League. Alexsis Delgado and the other player were situated so that they were approximately 20 feet away from each other outside of the third base line but parallel to same, approximately six feet away from the perimeter fencing. Delgado was located down the line near third base proper while his receiver was located towards home plate near the dugout area. At some point in time, a ball thrown by Delgado in the air passed by his receiver, passed over the perimeter fence and struck plaintiff in the left side of his head, allegedly causing injury to plaintiff’s left eye. At the time plaintiff was struck by the thrown ball, he was "facing to my right talking to a friend of mine, so I would be facing to the right, the ball would be coming from the left * * * leaning on the fence”. The game itself had not started and defendant Delgado, his unknown receiver and other players were "warming up” at the time.
Defendants have moved for summary judgment while plain *403 tiffs have cross-moved to amend paragraph eighth of the complaint by, in substance, striking terminology describing himself as a "spectator” and substituting therefor a phrase indicating that he "was standing outside the fence of the Erie Street baseball field”.
"When the Legislature enacted the comparative negligence statute (CPLR 1411), effective September 1, 1975, it abolished the doctrine of assumption of risk and contributory negligence as absolute bars to a plaintiff’s recovery. Currently, assumption of risk and contributory negligence are termed 'culpable conduct’ and, if proven, operate only to proportionately reduce a plaintiff’s recovery (CPLR 1411).” (Maddox v City of New York, 108 AD2d 42, 46, n 1 [2d Dept, Apr. 1, 1985; emphasis added.)
The Court of Appeals in Akins v Glens Falls City School Dist. (53 NY2d 325, 331, supra) defined the duties of the proprietor of a ball park, vis-á-vis spectators, thusly: "[W]here a proprietor of a ball park furnishes screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest and that screening is of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game, the proprietor fulfills the duty of care imposed by law and, therefore, cannot be liable in negligence [such backstop screening must be] of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game”.
Sporting events by their very nature create certain risks for both participants and spectators and "the spectator [of the] sporting event, no less than the participant, 'accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of [being] thrust by his antagonist or a spectator at a ball game the chance of contact with the ball * * * The timorous may stay at home.’ ” (Akins v Glens Falls City School Dist., supra, at p 392, citing Murphy v Steeplechase Amusement Co., 250 NY 479, 482-483.)
Plaintiff does not sue the "owner or proprietor” of the field per se but, rather, the team on the field at the time and the alleged offending player.
Plaintiff initially seeks to exempt himself from effect of negligence law concerning "spectators” by claiming that such would not apply inasmuch as he was injured during a *404 "warmup” practice and the actual game had not commenced. This is a distinction without a difference. Our courts "recognize the practical realities of this sporting event” (i.e., baseball) and whether or not the umpire has actually called, "Play Ball”, does not minimize the dangers to spectators present during the actual team warm-ups on the field pregame. (Akins v Glens Falls City School Dist., supra, at p 331; accord, Zeitz v Cooperstown Baseball Centennial, 31 Misc 2d 142, 144; Blackball v Albany Baseball & Amusement Co., 157 Misc 801.) When a small, hard (or soft) round ball is being thrown by one player at point "A” towards point "B” on the playing field, its arrival at point "B” is not guaranteed in the normal course of the game of baseball. "[E]ven after the exercise of reasonable care, some risk of being struck by a ball will continue to exist.” (Akins v Glens Falls City School Dist., at p 331.) Indeed, long prior to Akins recognizing this inherent danger in baseball, our courts held that spectators at baseball games "assumed the risk” of being struck and injured by thrown balls. (See, Robert v Deposit Cent. School Dist. No. 1, 18 AD2d 947 [3d Dept 1963], and cases cited therein.)
Plaintiff next contends that he was not really a "spectator” at such game since he alleges he had merely come there to introduce his adult son to the other players on the Monroe Tube baseball team inasmuch as his son was to play ball with them that day. The Monroe Tube softball team-was the same team of which defendant Delgado was a member. Plaintiff introduced his son to the team, which took about five minutes, and remained standing, leaning on and over the fence near third base.
This is not the case of a casual passerby on the sidewalk but one in which plaintiff elected to come specifically to the ball park, thereby placing himself in a zone of danger subject to all the known and inherent risks of attendance at such ball park. This court finds plaintiff was, based upon the known and recognized dangers of such sports contests, a "spectator” as a matter of law. If it is assumed, arguendo, that plaintiff had merely come to the ball park because he liked the taste of the hot dogs sold there or that it was a perfect place to obtain a good suntan, it is still the risk of danger involved which determines plaintiff’s classification, not his subjective motive or intent in being there. As shown below, classification of a plaintiff’s status is relevant only to the extent that it is but one factor in determining the defendant’s duty of care.
Though such case arose prior to the effective date of CPLR *405 1411, Zeitz v Cooperstown Baseball Centennial (31 Misc 2d 142, supra) is analogous. In Zeitz, plaintiff was seated in open bleachers directly behind first base during pregame activities. Two members of the baseball team were "warming up” on the field between home plate and first base which brought them on a line with the open stand in which plaintiff was seated approximately 14 feet away. The ball was being thrown in a line substantially parallel with the first base line. When plaintiff was struck by a "wild pitch” and injured he sued the owner of the ball park for negligent supervision. The court finding, inter alia, that a spectator at a baseball game may be regarded as assuming such risk from balls necessarily incident to the game found that plaintiff was guilty of contributory negligence or assumed the risk so as to preclude her from recovery from injury from a wildly thrown ball.
CPLR article 14-A, which includes CPLR 1411 through 1413, was enacted on the recommendation of the State Judicial Conference, submitted to the Legislature on February 1, 1975, to "complete the application of the principle of comparative negligence begun by Dole v. Dow Chemical Co. [30 NY2d 143].” (Judicial Conference Report, 1975 McKinney’s Session Laws of NY, at 1482 [hereinafter JCR-1975].)
CPLR 1411, effective September 1, 1975, reads: "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which cause[s], the damages.”
Prior to the enactment of CPLR article 14-A, application of the assumption of the risk doctrine served as a complete bar to a plaintiffs cause of action without regard to the degree of care exercised by a defendant ball park owner. (Cf. Akins v Glens Falls City School Dist., supra, at p 329.) However, the Akins court was quick to point out that "[tjhis ease does not involve the 'culpable conduct’ (CPLR 1411) — be it assumption of risk or contributory negligence — of a spectator injured in the course of a baseball game” (p 327).
In 1976, the Court of Appeals eliminated the prior legal distinctions of a plaintiffs status as trespasser, licensee or invitee as affecting the duty of care owed by a landowner or *406 occupier of such land by stating that it was not the status of the plaintiff which is to be determinative of the duty of such landowner or occupier but, rather, whether such owner or occupier of land exercised "reasonable care under the circumstances whereby foreseeability shall be a measure of liability * * * Contributory and, now, comparative negligence, as well as assumption of the risk, all fit into their respective places, to be invoked when appropriate.” (Basso v Miller, 40 NY2d 233, 241; emphasis added; cf. Akins v Glens Falls City School Dist., supra, at p 329; accord, Scurti v City of New York, 40 NY2d 433.) Basso and Scurti, however, both emphasized that "the court, as it would in the usual negligence action, must make the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made out a case sufficient in law to support a favorable jury verdict. Only in those cases where there arises a real question as to the landowner’s negligence should the jury be permitted to proceed. In all others, where proof of any essential element falls short, the case should go no further.” (Basso v Miller, at p 242; cf. Scurti v City of New York, at p 442.)
Akins (supra), focused on the duty of care of the landowner, i.e., the owner of the ball park and stated "the critical question becomes what amount of screening must be provided by an owner of a baseball field before it will be found to have discharged its duty of care to its spectators.” (Akins v Glens Falls City School Dist., supra, at p 330.) It did determine that the duty of care of the owners of ball parks was to screen the most dangerous section of the field, i.e., the area behind home plate and the screening that is provided must be sufficient for those spectators who may be reasonably anticipated to desire protective seats on an ordinary occasion. (Supra.) If under the facts as presented, the owner of the ball park had adequately provided such screening to the desired sufficient extent, Akins then held that the proprietor fulfilled his duty of care imposed by law and, therefore, could not be liable in negligence. (Supra, at p 331.) Akins "held only that a jury question may be presented 'where the adequacy of the screening in terms of protecting the area behind home plate properly is put in issue.’ ” (Davidoff v Metropolitan Baseball Club, 61 NY2d 996, 998.) Akins did not require that the entire field be fenced but mandated that adequate screening be had for the most dangerous area behind home plate. Akins recognized that many spectators might prefer to view the game from a seat unob *407 structed by fences or protective screening. (Davidoff v Metropolitan Baseball Club, supra, at p 998.)
Having found on the facts presented that the Glens Falls City District provided the screening and seating under its standards, Akins (supra) found that the school district had thus fulfilled its duty of reasonable care as a matter of law and, therefore, no question of negligence remained for the jury’s consideration. Accordingly, the court held "we need not reach and, therefore, do not consider the correctness of the trial court’s charge to the jury with respect to the applicability of the doctrine of assumption of risk under this State’s comparative negligence statute.” (Supra, at p 333.)
Chief Judge Cooke, dissenting in Akins (supra), found the majority’s rule to be inappropriate and viewed " 'reasonable care under the circumstances’ ” (p 333) to be more properly a question for the jury: "By holding as a matter of law that the defendant’s duty of reasonable care extends only to the construction of a backstop of specific proportions, the majority forecloses a jury from considering any other factors that might be present in an individual case. This rule of law denies recovery to injured spectators as effectively as the old doctrines of assumption of the risk and contributory negligence ever did, and uses a fundamentally similar rationale to do so.” (Supra, at p 337.) Chief Judge Cooke viewed the majority decision as reviving the assumption of the risk doctrine as a total bar to a plaintiff’s recovery in contravention of the comparative negligence statutes of CPLR article 14-A. (Supra.) Other commentators have viewed the Akins decision as "an unwarranted distortion of both case and statutory law * * * [i]n clear violation of legislative intent * * * [demonstrating] a procedure whereby behavior on the part of the plaintiff can be examined solely in terms of defendant’s duty rather than in terms of plaintiff’s culpable conduct.” (Recent Development, Akins v. Glens Falls City School District: A Crack In the Wall of Comparative Negligence, 46 Alb L Rev 1533, 1552-1553 [hereinafter Recent Development, 46 Alb L Rev].) As shown below, however, such comment fails to understand Akins’ rationale and the long-recognized legal distinction on which the majority relied.
That the court in Akins (supra) was specifically concerned with the duty of the owner or proprietor of a baseball park, vis-á-vis screening for protection of spectators, was pointed out later in Davidoff v Metropolitan Baseball Club (61 NY2d, at p 998). Plaintiff in Davidoff argued that there was a jury ques *408 tion " 'where the inadequacy of the screening at the point of injury is put in issue’ ” (p 998; emphasis added). The court stated "[t]his is a mischaracterization of Akins, where we held only that a jury question may be presented 'where the adequacy of the screening in terms of protecting the area behind home plate properly is put in issue.’ * * * The rule suggested by plaintiff would require a baseball field proprietor to operate as an insurer of spectators unless there was a protective screen shielding every seat * * * No * * * reason has been shown why the rule of policy set forth in Akins should be changed” (p 998; emphasis added). Chief Judge Cooke, in dissent, once more reiterated his opinion that "limiting the area to be protected to that area behind home plate does nothing more than to artificially limit the liability of * * * park owners.” (Supra, at p 1000.)
Davidoff (supra) correctly analyzes the Akins decision (supra) for what it was and is, i.e., "a rule of policy” for the owners of sports fields and in particular for that of the sport of baseball. While the Basso-Scurti rules of "reasonable care under the circumstances whereby foreseeability shall be a measure of liability” (Basso v Miller, 40 NY2d, at p 241) were deemed paramount in the analyzation of the duty of care of the park owner, a policy compromise was taken by the court in Akins in its determination of the existence of a duty on the part of the park owner: "This is not to say that, by adequately screening the area of the field where the incidence of foul balls is the greatest [i.e., behind home plate] the risks inherent in viewing the game are completely eliminated. Rather, even after the exercise of reasonable care, some risk of being [hit] by a ball will continue to exist.” (Akins v Glens Falls City School Dist., at p 331.) Both Akins and Davidoff rejected the implied premise that the owner of the ball park could be thought of as an "insurer of spectators unless there was a protective screen shielding every seat.” (Davidoff v Metropolitan Baseball Club, at p 998.)
The court thus clearly recognized that by the nature of the game of baseball no matter where one is seated or standing, there is a risk of injury to such spectators; however, it found that in the areas beyond that of behind home plate, e.g., "along the baselines * * * the risk of being struck by a stray ball [is] considerably less.” (Akins v Glens Falls City School Dist., supra, at p 332.) The court specifically rejected the premise that "every spectator injured by a foul ball, no matter where he is seated or standing in the ball park, would have an *409 absolute right to go to the jury on every claim of negligence, regardless of the owner’s efforts to provide reasonable protection and despite the spectator’s failure to utilize the protection made available. ” (Supra, at pp 331-332; emphasis added.)
Thus, while the court had stated that its decision did not involve "culpable conduct” under CPLR 1411 of a spectator and had emphasized that it was merely dealing with the duty of care of the landowner, it implicitly found that there are certain "at risk” areas in a ball park which do not fall within the duty of care of the park owner, vis-á-vis the spectator and thrown or batted balls. A spectator seated or standing beyond the area of screening behind home plate, if such screening is found to have been of sufficient extent to provide adequate protection for as many spectators as might have reasonably been expected desirous of seating in the course of such an ordinary game, has no further duty owed him by the proprietor of the ball park for possible injury by thrown or batted balls and has, for all practical purposes, "assumed the risk” as evidenced by pre-1975 case law, though Akins (supra) focuses the standard as being one to whom no duty is owed and, therefore, one for whom the proprietor of the ball park cannot be negligent as a matter of law. On such a rationale the dictates of CPLR 1411 are viewed as not relevant inasmuch as no further duty is found for the "beyond the fence” spectator. If there is no duty as a matter of policy for such spectator, there cannot be a breach or violation of such duty and, therefore, the plaintiff spectator would fail to establish the elements necessary for a cause of action in negligence.
If, as this court believes and as demonstrated by later court decisions (cf. Davidoff v Metropolitan Baseball Club, supra), the decision in Akins (supra) arose primarily out of recognized policy considerations for sports in general and baseball in particular, then it is clear that its decision is one of practicality, given the circumstances of the sports-spectator relationship. The court clearly wished to avoid the imposition of a burdensome requirement of complete fencing for every sports area, opting instead for a requirement of reasonable protection under the circumstances and avoiding the possibility that "every spectator injured by a foul ball, no matter where he is seated or standing in the ball park [has] an absolute right to go to the jury on every claim of negligence”. (Cf. Akins v Glens Falls City School Dist., supra, at p 331.) By pointedly avoiding the implications of CPLR 1411 and stating that "culpable conduct” was not involved in the Akins determina *410 tion (Akins v Glens Falls City School Dist., supra, at p 327) the court was able, by focusing on the duty of the defendant, to also avoid the undesired effect of specifically having to determine in each and every case wherein a spectator sits beyond a fenced area whether or not such conduct was "culpable”, thereby having every case, by the broad application of CPLR 1411, necessarily going to a jury for determination of such fact. Indeed, while the Court of Appeals in Akins reversed the opinion of the Appellate Division, Third Department, which had found, inter alia, that the lower court was correct in the circumstances of the case in not charging assumption of the risk, it implicitly adopted the Appellate Division’s recognition that the doctrine of assumption of the risk "[might] still possess some of its former vitality in the strict sense of negating a defendant’s duty”. (75 AD2d 239, 240 [3d Dept 1980], supra; cf. McEvoy v City of New York, 266 App Div 445, affd 292 NY 654; Baker v Topping, 15 AD2d 193, 195.)
Indeed, even prior to Akins (supra) there is strong support for the view that assumption of the risk is "simply a left-handed way of describing a lack of duty”. (2 Harper and James, Torts § 21.7, at 1190 [1956]; see also, Prosser, Torts § 68, at 440 et seq. [4th ed 1971]; see also, Turcotte v Fell, 123 Misc 2d 877, 881.) The drafters of CPLR 1411 recognized that a duty of care "analysis” would bar plaintiff’s recovery as a matter of law, "thereby undermining the purpose of this article — to permit partial recovery in cases in which the conduct of each party is culpable * * * [I]t is expected that the courts will treat assumption of risk as a form of culpable conduct under this article.” (JCR-1975, at 1485.) It is perhaps unfortunate that the first major occasion wherein the applicability, or lack thereof, of CPLR 1411 might have been tested arose in a "sports injury” context for, as shown above, certain policy considerations of long standing could not fail but have an impact in the Akins determination which resulted in a decision which the framers of CPLR 1411 had sought to avoid.
However, in the opinion of this court, the problem arises not in the Akins determination (supra), but in the purported overall rationale and effect of the CPLR 1411 legislation. The Judicial Conference stated "[t]his article equates the defenses of contributory negligence and assumption of risk by providing that neither shall continue to serve as a complete defense in actions to which this article applies * * * The statute is also consistent with the position taken by the New York courts, which have found that 'there is a borderline where the *411 concept of contributory negligence merges almost imperceptibly into that of acceptance of a risk’ (JCR-1975, at 1484-1485.) For example, there is strong support in logic and law for the proposition that contractual or express assumption of the risk will relieve a defendant of liability even in States such as New York wherein comparative negligence applies. (See generally, Akins v Glens Falls City School Dist., 75 AD2d, at p 240; Arbegast v Board of Educ., 65 NY2d 161, 170, n 7; Recent Development, 46 Alb L Rev, at 1550; compare, Prosser, Torts, at 440 [4th ed], with Restatement [Second] of Torts § 496A, comment c (1)-(4); see also, Riley v Davison Constr. Co., 381 Mass 432, 409 NE2d 1279, 1283, and cases cited therein.)
The substantive legal doctrine of assumption of the risk was specifically intended to be included within the phrase "culpable conduct”. "The phrase 'culpable conduct’ is used instead of 'negligent conduct’ because this article will apply to cases where the conduct of one or more * * * parties will be found to be not negligent, but will nonetheless be a factor in determining the amount of damages.” (JCR-1975, at 1484.) Culpable conduct as envisioned by CPLR 1411 is further made an affirmative defense under CPLR 3018 (b).
Injury to sports spectators has traditionally been categorized under what Prosser (Torts, at 445 [4th ed]) terms "implied acceptance of risk”. "By entering freely and voluntarily into any relation or situation where the negligence of the defendant is obvious, the plaintiff may be found to accept and consent to it, and to undertake to look out for himself and relieve the defendant of the duty. Thus those who participate or sit as spectators at sports * * * may be taken to assume all the known risks of being hurt by * * * flying baseballs * * * [However,] the fact that the risk may be assumed is by no means conclusive as to whether it has been assumed * * * the plaintiff must know and understand the risk he is incurring, and * * * his choice to incur it must be entirely free and voluntary.” (Id., at 445-447.)
The Akins decision (supra) can also be viewed as posing a procedural anomaly when a doctrine such as assumption of the risk is an issue, for as the court recognized, it is for the plaintiff to first show a duty of care on the part of defendant and the breach of such duty. "Culpable conduct” by the provision of CPLR 1411 is an affirmative defense which is the defendant’s responsibility to plead and prove. As soon as the Akins court stated its emphasis to be one of duty of care, plaintiff was, therefore, placed in a procedural disadvantage *412 for the question of whether or not such duty exists and the extent thereof is one of law. Policy considerations in the area of sports injuries to spectators mandated such result. It should be noted that this apparent "sports exception” is not unique as a matter of policy. In adopting comparative negligence, the State of Pénnsylvania by statute exempted the sport of "downhill skiing”, finding that there were inherent risks in it, as in some other sports, that it was practiced by a great many citizens of the State and boosted the State’s economy by tourist participation. (See, 42 Pa Cons Stat § 7102 [c] [1], [2]; Rutter v Northeastern Beaver County School Dist., 496 Pa 590, 437 A2d 1198, 1210, n 6; accord, Arbegast v Board of Educ., supra, at p 170, n 7.)
By lumping together the terms contributory negligence and assumption of the risk, the Legislature took note that "[there] is a [borderline] where the concept of contributory negligence merges almost imperceptibly into that of [assumption] of a risk * * * Very often the difference is * * * one of terminology.” (McFarlane v City of Niagara Falls, 247 NY 340, 349; see, JCR-1975, at 1484-1485.) However, the problem arises because there are degrees of conduct which are not quite so borderline as the JCR would like. Indeed, it is recognized that in dealing with assumption of the risk and contributory negligence "either may exist without the other”. (Prosser, Torts, at 441 [4th ed].) Many authorities agree that the issue is more properly analyzed as being one of "consent” rather than assumption of the risk. (See, Turcotte v Fell, 123 Misc 2d, at p 882, and cases cited therein.) Prosser recognized that "[i]n its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone * * * the consent is to run the risk of unintended injury, to take a chance, rather than a matter of the greater certainty of intended harm * * * [and a spectator entering a baseball park may] sit in an unscreened seat, and so consent that the players may proceed with the game without taking any precautions to protect him from being hit by the ball. Again the legal result is that the defendant is simply relieved of the duty which would otherwise exist.” (Prosser, Torts, at 440 [4th ed].) Conduct of a plaintiff may create express assumption of the risk as well. (Cf. Arbegast v Board of Educ., supra.)
*413 Akins recognized that
"many spectators attending [baseball games] desire to watch the contest taking place on the playing field without having their view obstructed or obscured by a fence or a protective net
"[however] [t]his is not to say that, by adequately screening the area of the field where the incidence of foul balls is the greatest, the risk inherent in viewing the game [was] completely eliminated.” (Akins v Glens Falls City School Dist., supra, at p 331.)
Akins chose not to view the action of the spectator in choosing an unprotected seat as being either one of negligence or culpability. Indeed, it is difficult to imagine a spectator’s act in choosing a provided seat at a sporting event as being necessarily unreasonable so as to amount to negligence. Therefore, it seems one may voluntarily assume the risk of a possible harm and yet not be negligent in doing so. It is when a plaintiff unreasonably encounters a risk in which the benefit to be derived is of insufficient magnitude that questions of contributory negligence may arise. Therefore, it seems that one may voluntarily assume the risk of a possible harm and yet not be negligent in doing so. It is no longer an implied acceptance of a risk but one rather of unreasonable conduct. The classic distinction is Prosser’s jaywalker on a busy street. The jaywalker does not consent to being struck through the negligence of a driver but, rather, insists that they use due care to avoid running him down. This, then, is contributory negligence and not assumption of the risk. (Prosser, Torts, at 445 [4th ed].)
In focusing on the duty of care, Akins (supra) in this sports context has, in substance, drawn the spectator’s conduct not towards that of contributory negligence or "culpable conduct” but rather, tightened the bond between express assumption of the risk and implied assumption of the risk by conduct, for its viewpoint of duty of care as a primary analysis relies heavily upon the action of the injured party in relation to the one for whom the duty is claimed.
This should not be construed as indicating that in situations wherein a classic "assumption of the risk doctrine” may be applied that an injured party assumes all risks of such conduct, but only with respect to known dangers or risks which inhere in the activity.
In the instant case, in substance, the plaintiff, a 45-year-old man, took his adult son to a baseball park where members of *414 the Goshen Sunday Morning Softball League were "warming, up” in preparation for a baseball game. Plaintiff situated himself behind a fence, partially exposed, away from the general backstop area on the third base side, six feet away from where defendant Delgado and another member of a participating baseball team were warming up by throwing a baseball parallel to and in front of the fence where plaintiff was standing. An alleged wild throw from defendant Delgado crossed over the fence on which plaintiff was leaning and struck plaintiff on the side of the head while plaintiff was not watching the activity on the field.
No liability on the part of the owner of such baseball field is presented; however, plaintiff claims the individual defendant Delgado and the Goshen Sunday Morning Softball League were negligent in that they "failed to take those precautions reasonable and necessary so as to avoid the occurrence of the accident * * * described”.
The court sees no reason to depart from the Akins (supra) standard of reasonable care under the circumstances as imposed upon the owners, proprietors and occupiers of the ball park in dealing with this injury to a spectator in the case of a cause of action as directed against the players and the league itself. "Negligence is not a thing but a relation. It cannot exist in a vacuum. It is relative to. time, place, circumstances and persons, and what may be negligence as to one person may not be so as to another”. (1 NY PJI 126.) There is nothing in the evidence submitted by plaintiff to indicate that defendant Delgado or codefendant Goshen Sunday Morning Softball League failed to exercise ordinary care under the circumstances. The ball players were where they had a right to be, inside the fence along the third base line warming up by throwing a baseball back and forth parallel to such fence line. There is no question but that adequate screening and seating existed behind the home plate area where plaintiff might well have seated himself and talked to his friends. There was no indication that defendant Delgado was throwing such ball directly at plaintiff but, indeed, the facts show that the warmup positions were parallel to plaintiff. A portion of plaintiff’s body was protected by the fence and, therefore, while the "possibility” of plaintiff becoming injured by defendant’s action was certainly foreseeable, the act of the two players in warming up with the softball was not unreasonable in proportion to the threat of danger presented. Available sufficient *415 protection was available to the plaintiff, who admittedly placed himself in a position near such warm-up position where the sideline fence did not fully protect him. Plaintiff proceeded to lean on the perimeter fence, exposing his upper body while admittedly talking to a friend with his head turned away from the "warmup” action at the time of his injury by the wild throw.
Under the circumstances, there was no duty on the part of either the defendant Delgado or the league to warn plaintiff of hazards inherent in the game of baseball (cf. Baker v Topping, 15 AD2d 193, lv denied 11 NY2d 644; Cimino v Town of Hempstead, 110 AD2d 805, 806) nor are there sufficient factual allegations within either the complaint or the evidence as presented through the examinations with respect to the alleged "lack of supervision” on the part of defendant league (cf. Kozera v Town of Hamburg, 40 AD2d 934).
The court finds as a matter of law that the defendants have not violated their duty of care in these factual circumstances of which there is no real controversy. (Compare, McEvoy, 266 App Div 445, supra, with Arbegast, 65 NY2d 161, supra.) There are no allegations indicating either defendant engaged in wanton, reckless or intentional conduct, only negligence. Accordingly, under the principles of Akins v Glens Falls City School Dist. (53 NY2d 325, supra), this court finds that under the undisputed facts, defendants fulfilled their duty of reasonable care to the plaintiff as a matter of law and, therefore, no question of negligence remains for a jury’s consideration and as such, does not involve "culpable conduct” under CPLR 1411.
Defendants’ motion for summary judgment dismissing plaintiffs first cause of action is granted and such cause is dismissed as a matter of law. Inasmuch as plaintiffs second cause of action, one of his wife for loss of services and consortium is derivative of cause of action number one, said cause of action is also dismissed.
Plaintiffs application for leave to amend pleadings, only insofar as regards plaintiffs status as "spectator”, is denied as moot inasmuch as by implication above this court finds as a matter of law, under the circumstances and facts, that plaintiff by whatever named status at the time was a "spectator” for purposes of the Akins (supra) rationale.