OPINION OF THE COURT
Allan L. Winick, J.
Presently before this court is a motion seeking an order granting a preliminary injunction pursuant to CPLR 1333, enjoining the defendant from directly or indirectly effecting or furthering the sale, gift, transfer, pledge or mortgage of money not to exceed $10,000 held by European American Bank and Nassau County Police Property Bureau, and from taking any other action otherwise alienating or encumbering his right, title or interest in that property or any part of it.
Previously, an order to show cause, containing a temporary restraining order (TRO) was granted based on the affidavits of the Assistant District Attorney acting for the claiming author *435 ity, the arresting officer, the summons with notice, and the District Court information charging the defendant with committing violations of Penal Law §§ 220.43, 220.18, 220.41, 220.16, 220.16 (12), (1).
Defendant was personally served on June 24, 1985 at 1500 hours (3:00 p.m.), at the Nassau County Correctional Center, East Meadow, New York, according to the affidavit of Henry E. Nathanson, sworn to on June 24, 1985. Defendant has not appeared in this action.
The article governing this action is relatively new and is an uncharted frontier. The Governor, Mario M. Cuomo, in approving the legislation, lauded the forfeiture statute as an effective tool to be used by law enforcement agencies to take the profit out of crime. He notes, in particular, its effectiveness in fighting the battle against illicit drug trafficking and other forms of organized crime and encouraged the law enforcement community to use it vigorously. (Executive Memorandum, L 1984, ch 669, 1984 McKinney’s Session Laws of NY, at 3627.)
Forfeiture has had a long and diverse history as an instrument in the war against crime. Forfeiture has existed since biblical and pre-Judeo-Christian times. (Comment, Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking, 32 Am U L Rev 227 [1982].) It was a common-law practice to forfeit to the Crown the value of an inanimate object directly or indirectly causing the accidental death of a King’s subject as a deodand (2A Weinstein-Korn-Miller, NY Civ Prac ¶ 1311.02; see generally, Finkelstein, The Goring Ox: Some Historical Perspectives on Deodands, Forfeitures, Wrongful Death and the Western Notion of Sovereignty, 46 Temp L Q 169 [1973].) Deodand was not adopted in the American common law, but as in England, forfeiture of commodities and vessels used in violation of customs and revenue laws was provided for by early statutes. (Calero-Toledo v Pearson Yacht Leasing Co., 416 US 663, 682-684 [1974].) In rem forfeitures such as these continue to exist on the Federal and State levels. In personam forfeiture actions have not been looked upon favorably throughout history. Convicted felons forfeited their estates in medieval England until such forfeitures were significantly circumscribed by the Magna Carta and completely abolished in England by the 19th century (Taylor, Forfeiture Under 18 U.S.C. § 1963 — RICO’s Most Powerful Weapon, 17 Am Crim L Rev 379, 381-382 [1980]). US Constitution, article III, § 3 explicitly prohibited forfeiture of *436 an estate for a felony except for a convicted traitor during the traitor’s lifetime. With the enactment of Organized Crime Control Act of 1970, title IX (known as RICO; 18 USC § 1961 et seq.), in personam forfeiture actions gained new favor. The Controlled Substance Act of 1970 (21 USC § 801 et seq.) expanded the in personam forfeiture by authorizing the forfeiture of the proceeds derived from the criminal activity of those persons convicted of engaging in continuing criminal enterprise (CCE). (2A Weinstein-Korn-Miller, NY Civ Prac ¶ 1311.02.)
CPLR article 13-A forfeiture actions differ from other forfeiture statutes, in that, while directed at criminals, the action is strictly civil and remedial in nature. Provisional remedies are now available in forfeiture actions pursuant to CPLR article 13-A. Article 13-A also provides the claiming authority with the flexibility of seeking forfeiture of any of this criminal defendant’s assets once the amount of the gain from the criminal activity is established. The forfeiture may be of the proceeds of the crime, the substituted proceeds of the crime, the instrumentality of the crime or a money judgment in an amount equivalent in value to the property which constitutes the proceeds of the crime, the substituted proceeds of the crime or the instrumentality of the crime (CPLR 1311).
Turning now to the matter at hand, the claiming authority sets forth the facts upon which the forfeiture action, more specifically the instant application for the provisional remedy of preliminary injunction, is based.
In accordance with CPLR 1311 (1) (a), the claiming authority submitted a copy of the indictment pending in the County Court of Nassau. The indictment is dated August 19, 1985; a date within 60 days of the commencement of this action by personal service of the summons with notice upon the defendant, on June 24, 1985. The indictment supersedes the District Court informations attached as exhibits to the claiming authority’s application for a TRO and preliminary injunction (PI). The defendant has been indicted for the criminal sale of a controlled substance in the second degree (2 counts), criminal possession of a controlled substance in the third degree (2 counts), criminal possession of a controlled substance in the third degree (2 counts).
The crimes the defendant is charged with are "pre-conviction forfeiture crimes” (CPLR 1310 [6]). An action relating to a preconviction forfeiture crime need not be grounded upon *437 conviction of a preconviction forfeiture crime. Absent such a conviction it shall be necessary for the claiming authority to prove the commission of a preconviction forfeiture crime by clear and convincing evidence. (CPLR 1311 [1] [b].)
In granting an application for a provisional remedy the court must determine the following:
a. There is a substantial probability that the claiming authority will prevail on the issue of forfeiture and that the failure to enter the order may result in the property being destroyed, removed from the jurisdiction of the court, or otherwise be unavailable for forfeiture; and
b. the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order may operate. (CPLR 1312 [3].)
The claiming authority advises the court that the "evidence against the defendant indicates he was selling narcotic substances illegally, and was in possession of these narcotic substances illegally at the time of his arrest.” Neither the indictment nor the claiming authority’s allegation is evidence of a crime. The claiming authority states that an individual who cooperated with the police named the defendant as his "supplier.” In the accompanying affidavit of Detective Cuccinello of the Narcotics Squad of the Nassau County Police Department, it is revealed that this individual was under arrest for his involvement in the sale of narcotics when he "cooperated”.
The claiming authority further advises the court that the police officer involved in the case advised her that if the defendant gets out of jail, he plans to go to Ecuador. The basis for the officer’s belief is not disclosed. Detective Cuccinello’s affidavit makes no mention of the defendant’s alleged plan to flee this jurisdiction.
The only "evidence” offered to establish that the proceeds of the crime, or its equivalent, equals $10,000 lies in the affidavit of Detective Cuccinello. Based on information provided by the individual under arrest for the sale of narcotics, it was calculated by the detective that the individual had purchased approximately $10,000 worth of cocaine from the defendant since January 1985. The nature of those calculations was not revealed.
Assuming there is clear evidence to establish the commission of the crimes on June 20, 1985, involving first two ounces *438 of cocaine and later one ounce, there are no "proceeds” to be forfeited, nor any profit of the crime. The police department intercepted the payment for the drugs during the arranged "buy”. According to the District Court informations those two transactions would have grossed $3,300 and $1,500, respectively, to the defendant. Aside from the detective’s "guesstimate”, based on information provided by a cooperative arrestee, there is no evidence to support the claiming authority’s request for a preliminary injunction. The reliability of this informant with respect to prior transactions with the defendant is inherently suspect. Absent some other proof, this court finds no basis to deprive the defendant of this property.
The claiming authority has failed to establish to this court’s satisfaction that there is a substantial probability that it will prevail on the issue of forfeiture. Furthermore, the claiming authority’s assertion that the detective told her the defendant would flee to Ecuador without some basis for that "knowledge” is unpersuasive in proving that a failure to enter this order will result in the unavailability of property for forfeiture. The bald assertion of the claiming authority that the need to preserve the availability of the property through the entry of the order outweighs the hardship of any party, absent any facts to support that position, is also unpersuasive.
While the statute does not require the claiming authority to prove its case at this preliminary stage, the granting of a preliminary injunction is a serious step.
This court is not convinced that the money in the European American Bank account has any relationship whatsoever to the commission of the crime. The statute does, however, allow for a money judgment in an amount equivalent in value to proceeds of the crime, substituted proceeds or the instrumentality of the crime (CPLR 1311 [1]). The court is similarly unconvinced that $10,000, the amount requested, represents the equivalent in value of such proceeds.
There must be some evidence that the property to be forfeited is in some way connected to the crime. Queens County District Attorney recently prevailed in its effort to obtain a preliminary injunction in District Attorney of Queens County v McAuliffe (129 Misc 2d 414 [1985]). In McAuliffe, the defendant extorted funds from an elderly woman as protection against a "contract” on the woman’s life. The aggregate sum of $154,000 was deposited into the defendant’s checking ac *439 count. The account number and branch of defendant’s account as well as the canceled checks were made part of the moving papers. The defendant admitted purchasing two parcels of land with the extorted funds and legal descriptions of the parcels were included in the information provided to the court.
Clearly, had this kind of detailed information been provided in the case at bar as was provided in McAuliffe (supra) a preliminary injunction would be in order. The information before the court is sketchy and best described as conclusory. There is no tracing of the proceeds of the crime to any specific property. Even more disturbing is the fact that the dollar amount fixed by the claiming authority bears no relationship to the crimes charged and is wholly unsupported by any evidence.
The purpose of the statute is to take the profit out of crime, not to arbitrarily seize any and all assets of a defendant absent some showing that the assets are the product of the defendant’s criminal endeavors.
While the affidavits in support of this application suggest that the claiming authority will be thwarted in its attempts to recover any property subject to forfeiture if the preliminary injunction is not granted, the affidavits lack specificity. The affidavits address the statutory criteria in a conclusory fashion rather than identifying those facts that are the foundation for their belief — that the proceeds of the crimes equal approximately $10,000. It is not clear that the defendant even has $10,000.
The defendant and claiming authority are given leave to submit to this court, within 20 days of the date of this order, detailed affidavits specifying those facts which support their respective positions. The District Attorney is directed to serve a copy of this order on the defendant and his attorney.
The court’s file does not contain a notice of appearance of any attorney in this matter. If the District Attorney is also unaware of counsel appearing on this matter, service on the attorney representing this defendant in the underlying criminal action and upon the defendant by mail will suffice.
The temporary restraining order remains in effect pending a decision of the application for a preliminary injunction.