■ JOAN WADE-KESZEY et al., Respondents, v TOWN OF NISKA-YUNA et al., Appellants. [772 NYS2d 401]—

Spain, J. Appeal from an order of the Supreme Court (Reilly, Jr., J.), entered September 9, 2003 in Schenectady County, which denied defendants' motion for summary judgment dismissing the complaint.

In July 2001, while a spectator at her son's Babe Ruth League All-Star game on Woodward Field at Blatnik Park in the Town of Niskayuna, Schenectady County, plaintiff Joan Wade-Keszey (hereinafter plaintiff) was struck in the face with a foul ball causing severe injuries. It is undisputed that, at the time, plaintiff was in the process of walking to the bathrooms located in a small building situated along the first baseline just to the rear of the bleacher area. Prior to being struck, plaintiff had been standing along the first baseline behind a six-foot chain link fence, watching the game. The ballpark was equipped with a fenced backstop which was 24 feet high and extended 27 feet in each direction, at an angle to the left and right along the first and third baselines. Spectators were permitted to stand or sit in

their own chairs behind the backstop, although no bleachers were installed there, or along the first and third baselines. Bleachers containing seven rows each were available along the first and third baselines, the lower rows of which were shielded by the six-foot fence which extended from the end of the backstop to the dug out.

Plaintiff and her husband, derivatively, commenced this action, alleging that defendants were negligent in failing to install foul ball netting on top of the six-foot sideline fencing and failing to warn of the hazards of foul balls. Supreme Court denied defendants' motion for summary judgment, finding plaintiffs had presented proof raising a triable issue of fact as to whether defendants had provided adequate protected space for spectators behind home plate so as to satisfy their duty of care articulated in *Akins v Glens Falls City School Dist.* (53 NY2d 325 [1981]). We now reverse and grant defendants' motion for summary judgment.

In *Akins*, the Court of Appeals defined the circumscribed duty of care owed by a proprietor of a baseball field to its spectators to fulfill the general duty of owners or occupiers of land "to exercise 'reasonable care under the circumstances' " (*id.* at 329, quoting *Basso v Miller*, 40 NY2d 233, 240-241 [1976]). Reiterating that ballpark owners are not insurers of the safety of spectators, the Court adopted the prevailing national two-prong standard governing the scope of owners' duties to provide protective screening, i.e., "the proprietor . . . need only provide screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest . . . [and] such screening must be of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of any ordinary game" (*Akins v Glens Falls City School Dist., supra* at 331; *see Davidoff v Metropolitan Baseball Club*, 61 NY2d 996 [1984]; *Clark v Goshen Sunday Morning Softball League*, 122 AD2d 769 [1986]). In defining this qualified duty, the Court specified that "[t]he perils of the game of baseball . . . are not so imminent that due care on the part of the owner requires that the entire playing field be screened" (*Akins v Glens Falls City School Dist., supra* at 329-330), explaining that "many spectators prefer to sit where their view of the game is unobstructed by fences or protective netting and the proprietor of a ball park has a legitimate interest in catering to these desires" (*id.* at 330; *see Ray v Hudson Val. Stadium Corp.*, 306 AD2d 264, 264-265 [2003]). In *Akins*, the Court concluded that the owner had provided adequate protective screening for the backstop area and, thus, it owed no duty

to a spectator who was injured by a foul ball after electing to stand in an unscreened area along the third baseline.

Here, plaintiff, who had attended most of her son's games and was familiar with this particular field, does not challenge the adequacy of the protective screening behind the backstop. Instead, she contends that defendants' failure to provide permanent seating[1]— or to locate the bathrooms—behind the backstop "forced" her to watch from the first baseline protected by only the six-foot fence and to walk unprotected through an area beyond the fence to the bathroom. In a supplemental affidavit, plaintiff claimed that there was no place for her to stand behind the backstop, although her father-in-law was sitting there in his own chair.[2]

Applying the rationale of *Akins v Glens Falls City School Dist. (supra)* to these facts, we conclude that defendants did not owe a duty to spectators to install screens or netting above the first baseline fence in order to protect the walking area between the fence and bathrooms from foul balls. The Court in *Akins* narrowly defined the scope of duty owed by a baseball park owner, specifically ruling that "the entire playing field [need not] be screened" (*id.* at 329-330). We discern nothing in *Akins*, its progeny or its antecedents to require ballpark owners to install protective screening to shield spectators on their way to bathrooms, concession stands and parking lots. Here, it appears that all spectators using the bathrooms needed to walk into an unprotected area and, consequently, any failure of defendants to provide adequate protected viewing areas did not cause or contribute to plaintiff's injury. Indeed, in *Akins*, the Court recognized that "even after the exercise of reasonable care, some risk of being struck by a ball will continue to exist" (*id.* at 331; *see Rosa v County of Nassau*, 153 AD2d 618, 619 [1989]). Stated differently, even if plaintiff had been "forced" to stand in an inadequately protected area to watch the game, as she alleges, at the time she was struck by a foul ball, she was proceeding to the bathroom and defendants owed no duty to protect

---

**1.** It is not clear that *Akins v Glens Falls City School Dist. (supra)* requires that *permanent* seating be provided—as opposed to a seating/standing area— behind the backstop, or that sufficient alternative protected seating/standing areas may not satisfy the duty delineated by prong two of *Akins* (*see Zambito v Village of Albion*, 100 AD2d 739 [1984], *cited in Gilchrist v City of Troy*, 67 NY2d 1034, 1035 [1986]).

**2.** The game at which plaintiff was injured was not "an ordinary game" (*Akins v Glens Falls City School Dist., supra* at 331) but, rather, an All-Star game at which attendance was higher—approximately 500 spectators according to plaintiffs' supplemental affidavits; no proof of the field's usual attendance was presented, although there was bleacher seating for 150 spectators.

spectators in that path (*see Baker v Topping*, 15 AD2d 193, 195-196 [1961], *lv denied* 11 NY2d 644 [1962] [dismissing complaint where the plaintiff was struck by a hit ball while walking to an unscreened seat], [*cited in Akins v Glens Falls City School Dist., supra* at 329], *rejecting Olds v St. Louis Natl. Baseball Club*, 232 Mo App 897, 104 SW2d 746 [1937] [finding question of fact where the plaintiff was hit by a ball after leaving protected seating and proceeding to unprotected exit]).

Accordingly, as defendants established that they owed plaintiff no duty to provide screens or nets above the six-foot sideline fence to protect her from this injury and they had no duty to warn plaintiff of the open and obvious danger presented by foul balls at a baseball park (*see Soich v Farone*, 307 AD2d 658, 659 [2003]), they are entitled to summary judgment dismissing the complaint (*see Akins v Glens Falls City School Dist., supra* at 333).

Peters, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted, and complaint dismissed.