■ D. James Sutton et al., Appellants, v Eastern New York Youth Soccer Association, Inc., et al., Respondents. [779 NYS2d 149]—

Spain, J. Appeal from an order of the Supreme Court (Canfield, J.), entered July 22, 2003 in Rensselaer County, which granted defendants' motion for summary judgment dismissing the complaint.

While attending a soccer tournament in which his son was a participant, plaintiff D. James Sutton (hereinafter plaintiff) was struck by a soccer ball kicked by a 16-year-old boy practicing on one of the soccer fields between games. Thereafter, plaintiff and his wife, derivatively, commenced this personal injury action against organizations and teams sponsoring and/or participating in the tournament, as well as the boy who kicked the ball, seeking to recover damages for injuries he sustained to his knee as a result of the accident. Supreme Court granted summary judgment to all defendants, finding that plaintiff had assumed the risk of being struck by a soccer ball, and dismissed the complaint. On plaintiffs' appeal, we affirm.

According to plaintiff, May 30, 1999 was a sunny, exceedingly hot day and his son, a member of defendant Latham Circle Soccer Club, was participating in a Highland Soccer Club Tournament at Maalyck Park in the Town of Glenville, Schenectady County. Plaintiff attended as a spectator and had just finished watching his son's second game of the day from one of the sidelines when he walked to the end of the field to a tent which had been erected by his son's team some 30 to 40 yards behind the goal line in order to provide shade for the players while they

were not engaged on the field. While walking past the field, plaintiff noticed six or seven players from defendant Guilderland Soccer Club on the field "hacking around" and warming up for the next game. Once under the tent, plaintiff was in the process of removing a sandwich from his son's cooler when he was struck in the chest and knocked off his feet by a soccer ball kicked from the field by a Guilderland player, defendant Ian Goss.

The first argument raised on appeal is that plaintiff was not a voluntary spectator of the soccer match at the point in time when he was injured; accordingly, plaintiffs argue, he cannot be found to have assumed the risk of injury (*see Hawkes v Catatonk Golf Club*, 288 AD2d 528, 529-530 [2001]). In support of this contention, plaintiffs point to the fact that a game was not in progress on the field and that, when injured, he was standing some 30 to 40 yards away from the field of play. We are unpersuaded. The doctrine of assumption of risk can apply not only to participants of sporting events, but to spectators and bystanders who are not actively engaged in watching the event at the time of their injury (*see Sutfin v Scheuer*, 145 AD2d 946, 947-948 [1988], *affd* 74 NY2d 697 [1989]). Indeed, "the spectator at a sporting event, no less than the participant, 'accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball . . . . The timorous may stay at home' " (*Akins v Glens Falls City School Dist.*, 53 NY2d 325, 329 [1981], quoting *Murphy v Steeplechase Amusement Co.*, 250 NY 479, 482-483 [1929] [Cardozo, Ch. J.]). Here, plaintiff admitted that he was at the tournament as a spectator and was aware that players were practicing on the field when he walked past them. Furthermore, although plaintiff's son's team had just finished a game, the tournament involved hundreds of players with teams playing at various times on at least five fields and plaintiff had been at the tournament all morning, surrounded by this activity. Under these circumstances, we find that plaintiff's presence at the tournament rendered him a voluntary spectator to the soccer play in progress throughout the day (*cf. Hawkes v Catatonk Golf Club, supra* at 530).

Next, plaintiffs contend that the placement of the tent behind the goal line of one of the soccer fields enhanced the risk to spectators at the game, thereby undermining the argument that plaintiff assumed the risk of getting struck by a ball. Plaintiffs rely on evidence in the record that spectators at soccer games should, for their safety, observe the game from the sidelines and

that standing behind the goal line increases the chance of being struck by a kicked ball. This Court has not previously had occasion to address directly the duty of care owed to spectators at a soccer match (*but see Honohan v Turrone*, 297 AD2d 705 [2d Dept 2002]). Existing jurisprudence surrounding the duty owed to spectators at a baseball game, though not controlling given the differences in the games of baseball and soccer, is nonetheless helpful to our analysis.

In *Akins v Glens Falls City School Dist.* (*supra*), for the first time, the Court of Appeals defined a circumscribed duty of care owed by the proprietor of a baseball field to its spectators. Taking into consideration the independence of spectators who might want to watch a game from an unprotected vantage point, and recognizing that "even after the exercise of reasonable care, some risk of being struck by a ball will continue to exist" (*id.* at 331), the Court held that "the proprietor of a ball park need only provide screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest" (*id.* at 331). Recently, we followed *Akins* and held that the municipal owner of a baseball park which has provided adequate space for spectators to view the game from behind the backstop did not owe a duty to install screens or netting above a fence running along the first baseline to protect spectators walking in the area between the fence and bathrooms against the risk of being struck by foul balls (*Wade-Keszey v Town of Niskayuna*, 4 AD3d 732, 733-735 [2004]). We stated that "[w]e discern nothing in *Akins*, its progeny or its antecedents to require ballpark owners to install protective screening to shield spectators on their way to bathrooms, concession stands and parking lots" (*id.* at 734).

Unlike baseball parks, outdoor soccer fields typically have no protective screening or fencing for spectators, presumably because the ball is larger and moves slower, enabling the spectator who observes a ball coming his or her way to avoid being struck. Indeed, plaintiffs do not suggest that, in the exercise of reasonable care, defendants had a duty to provide any protective measures along the sidelines (*see Honohan v Turrone, supra* at 705). Instead, plaintiffs assert that defendants unreasonably enhanced the risk of injury to plaintiff by essentially inviting him to stand at the end of the field through their placement of the team tent. Although we agree that a factual question has been presented as to whether the risk of being struck by a soccer ball is enhanced when a spectator is standing behind the goal line, we find that question immaterial to the disposition of this action. There is no suggestion that there was not adequate

room for the spectators to remain along the sidelines; in fact, plaintiff was seated along the sidelines prior to moving to the tent to get a sandwich (*see Wade-Keszey v Town of Niskayuna, supra* at 403-404; *see also Davidoff v Metropolitan Baseball Club*, 61 NY2d 996, 998 [1984]). Accordingly, just as the owner of a baseball park is not responsible for the spectator who leaves his or her seat and walks through a potentially more hazardous zone to reach a bathroom or concession stand, thereby assuming the open and obvious risk of being hit by a ball, defendants here cannot be held responsible for the risk assumed by plaintiff when he, aware that players were active on the field, left the sidelines and stood in the tent positioned in the arguably more dangerous zone behind the goal line (*see Wade-Keszey v Town of Niskayuna, supra* at 402).

We also reject plaintiffs' contention that the risk of being struck while some 40 yards away from a field upon which no formal game was in progress was not open and obvious. In the context of a sporting event, where the risks "are fully comprehended or perfectly obvious" a participant will be deemed to have consented to such risk (*Turcotte v Fell*, 68 NY2d 432, 439 [1986]; *see Sutfin v Scheuer*, 145 AD2d 946, 947 [1988], *supra*). As discussed, plaintiff had been in attendance for hours at a tournament where soccer games were almost continuously in progress and had actual knowledge that players were kicking the ball around on the field when he opted to move to the tent behind the goal line. Further, he was familiar with the game of soccer having admittedly been a frequent spectator of the game for over 14 years (*see Sutfin v Scheuer, supra* at 947). Under these circumstances, we hold that plaintiff should have appreciated the risk of being hit by an errant soccer ball when he opted to enter the tent in the area behind the goal (*see id.; see also Honohan v Turrone, supra* at 705).

Finally, while it is true that participants and spectators of sporting events are not deemed to have consented to reckless or intentional acts (*see Turcotte v Fell, supra* at 439), contrary to plaintiffs' contentions, we find no record evidence that Goss acted recklessly when he misfired the ball in plaintiff's direction, inasmuch as it is questionable whether it is "even arguably negligent" for youngsters participating in sporting events to make an errant throw or kick (*Sutfin v Scheuer, supra* at 948; *see Bierach v Nichols*, 248 AD2d 916, 918 [1998]).

We have considered plaintiffs' remaining contentions and find them to be without merit.

Mercure, J.P., Peters, Carpinello and Kane, JJ., concur. Ordered that the order is affirmed, with costs.