BARBARA GILCHRIST, Individually and as Parent and Natural Guardian of JOHN GILCHRIST, an Infant, Respondent, v CITY OF TROY, Defendant and Third-Party Plaintiff-Appellant-Respondent. J. GREGORY CROZIER et al., Doing Business as CROZIER, KEARNS, PHILIPPI, ARCHITECTS, Third-Party Defendants-Appellants, et al., Third-Party Defendant. (And a Fourth-Party Action.)

Third Department, December 5, 1985

### APPEARANCES OF COUNSEL

*Donald C. Bowes, Corporation Counsel (Donald J. Shanley* of counsel), for defendant and third-party plaintiff-appellant-respondent.

*Lawrence H. Long* for respondent.

*Burke, Cavalier, Lyman & Shanley (Michelle I. Casserly* of counsel), for J. Gregory Crozier and others, third-party defendants-appellants.

### OPINION OF THE COURT

CASEY, J.

· Appeals from an order of the Supreme Court at Special Term (Hughes, J.), entered December 31, 1984 in Rensselaer County, which denied the motions of defendant and third-party defendant architects seeking summary judgment dismissing the complaint and third-party complaint.

The dispositive issue on this appeal is whether defendant breached its duty of care owed to the infant who was injured by an errant hockey puck while he was watching an amateur hockey game at an ice skating facility owned by defendant. We conclude that this issue must be decided in light of the principles established in *Akins v Glens Falls City School Dist.* (53 NY2d 325), where the Court of Appeals defined the scope of the duty owed by a proprietor of a baseball field to the spectators attending its games. Based upon these principles, we further conclude that defendant and third-party defendant architects are entitled to summary judgment.

Plaintiff's son was injured in November of 1980 when he was struck in the face by a hockey puck while watching an amateur hockey game at Frear Park Skating Facility, owned by defendant. The facility, designed by third-party defendant architects, was constructed in or about 1973. The ice skating

surface is encircled by wooden dasher boards, with plexiglass screening atop the dasher boards at each end of the rink, around the areas occupied by the goals. The plexiglass screening encompasses approximately two thirds of the skating surface, with no screening along the middle one third of the rink. As originally designed and constructed, the facility had no spectator seating, but in 1975 or 1976, defendant added bleachers, allegedly along the unscreened area only. The infant was not seated in the bleachers at the time of the injury; rather, he was standing behind the dasher boards in the unscreened area.

In *Akins v Glens Falls City School Dist. (supra),* the infant plaintiff was injured when she was struck by a foul ball while watching a baseball game. She was standing behind a three-foot fence along the third base line. There were screened bleachers behind home plate, and there was no proof that the bleachers were filled or that the infant was prevented from watching the game from behind the backstop. Quoting *Basso v Miller* (40 NY2d 233), the Court of Appeals in *Akins* stated that an owner of a baseball field "like any other owner or occupier of land * * * is only under a duty to exercise 'reasonable care under the circumstances' to prevent injury to those who come to watch the games played on its field" *(Akins v Glens Falls City School Dist., supra,* p 329). In determining whether the defendant had discharged its duty of care to its spectators, the court declared: "We hold that, in the exercise of reasonable care, the proprietor of a ball park need only provide screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest. Moreover, such screening must be of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game. In so holding, we merely recognize the practical realities of this sporting event. As mentioned earlier, many spectators attending such exhibitions desire to watch the contest taking place on the playing field without having their view obstructed or obscured by a fence or a protective net. In ministering to these desires, while at the same time providing adequate protection in the most dangerous area of the field for those spectators who wish to avail themselves of it, a proprietor fulfills its duty of reasonable care under such circumstances" *(supra,* at p 331).

Applying these principles to the owner of a hockey rink, we conclude that the owner's duty owed to spectators is dis-

charged by providing screening around the area behind the hockey goals, where the danger of being struck by a puck is the greatest, as long as the screening is of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire to view the game from behind such screening (see, Sawyer v State of New York, 127 Misc 2d 295, 297). We reach this conclusion based upon the similarity between the games of baseball and hockey, at least insofar as the risks to spectators are concerned, a similarity which the courts of this State have previously recognized (Ingersoll v Onondaga Hockey Club, 245 App Div 137, 139; see also, Akins v Glens Falls City School Dist., supra, p 329). To be sure, there are differences in the way the games are played and in the facilities where the games are played. There can be little doubt that it is economically and practically more feasible to screen the entire perimeter of the playing surface for a hockey game than for a baseball game. Indeed, plaintiff has alleged that many hockey rinks at which professional and college games are played have screening around the entire perimeter of the skating surface. Based upon the wording of Akins (supra), however, it is apparent that the economics and practicalities of screening the entire field did not play a direct role in the court's holding. Rather, "the practical realities of this sporting event" were given great weight (Akins v Glens Falls City School Dist., supra, p 331), and in this regard hockey and baseball are sufficiently similar to require similar principles concerning the scope of the duty owed to spectators.

Plaintiff maintains that since the bleachers were located along the unscreened portion of the skating surface, while no bleachers were located behind the plexiglass screening, a question of fact exists as to whether defendant discharged its duty of care to the infant (see, Zambito v Village of Albion, 100 AD2d 739). In the circumstances of this case, the location of the bleachers is irrelevant. The infant elected to stand along the dasher boards to watch the hockey game rather than sit in the bleachers. By providing adequate screening behind the area of the hockey goals, defendant discharged its duty to spectators, such as the infant, who elect to view the game while standing along the dasher boards, and there is no claim that there was no room in the protected area or that the infant was prevented from watching the game from behind the screening.

Plaintiff also claims that since bleachers were located along the unscreened area of the skating surface, the infant could

reasonably assume that the unscreened area was safe, whether he was seated in the bleachers or standing along the dasher boards. We cannot agree that defendant's maintenance of the bleachers can alter its duty of care owed to spectators who elect not to use those bleachers. In addition, plaintiff's motion papers state that "it is a well known fact that a hockey puck is capable of leaving the ice skating rink at any location"; the infant testified that he had attended a number of hockey games and was familiar with the game; and plaintiff testified that she had asked her son on several prior occasions to stand behind the plexiglass screening and that he understood the reason for her request. Accordingly, any claim that the infant could reasonably assume that he was safe in standing along the unscreened dasher boards is belied by the record.

The foregoing analysis leads us to conclude that defendant did not breach its duty of care owed to the infant and that, therefore, defendant's motion for summary judgment dismissing the complaint should have been granted. It follows that the motion by third-party defendant architects for summary judgment dismissing the third-party complaint should also be granted.

YESAWICH, JR., LEVINE and HARVEY, JJ., concur with CASEY, J.; KANE, J. P., dissents and votes to affirm upon the opinion of Justice HAROLD J. HUGHES at Special Term.

Order reversed, on the law, without costs, motions for summary judgment by defendant and third-party defendant architects granted, and complaint and third-party complaint dismissed.