Smero v City of Saratoga Springs (2018 NY Slip Op 02521)





Smero v City of Saratoga Springs


2018 NY Slip Op 02521


Decided on April 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 12, 2018

525136

[*1]LORI SMERO, Individually and as Parent and Guardian of RACHEL SMERO, an Infant, et al., Respondents,
v
CITY OF SARATOGA SPRINGS et al., Appellants.

Calendar Date: February 14, 2018

Before: Egan Jr., J.P., Clark, Mulvey, Aarons and Rumsey, JJ.


Law Offices of Theresa J. Puleo, Albany (Norah M. Murphy of counsel), for City of Saratoga Springs, appellant.
Roemer Wallens Gold & Mineaux LLP, Albany (Matthew J. Kelly of counsel), for Saratoga Youth Hockey, Inc., appellant.
DeGraff, Foy & Kunz, LLP, Albany (George J. Szary of counsel), for respondents.


Clark, J.

MEMORANDUM AND ORDER
Appeal from an order of the Supreme Court (Nolan Jr., J.), entered March 24, 2017 in Saratoga County, which denied defendants' motions for summary judgment dismissing the complaint.
In 2014, plaintiffs' 10-year old daughter (hereinafter the child) sustained injuries to her head when she was struck by an
errant hockey puck that left the ice while she was spectating a youth hockey practice at Vernon Rink in Saratoga County. As a result of this incident, plaintiffs commenced this negligence action against defendants, the City of Saratoga Springs and Saratoga Youth Hockey, Inc., to recover for the child's injuries [FN1]. In their complaint, plaintiffs allege that defendants were [*2]negligent by failing, among other things, to install proper safety netting or barriers in the area where the child was injured, to construct or maintain the rink in a safe manner, and to supervise, control and maintain the activities occurring on the ice. After issue was joined and discovery was completed, defendants each moved for summary judgment dismissing the complaint against them, arguing that, as a spectator at the hockey practice, the child had assumed the risk of being injured by an errant hockey puck. Finding that there were triable issues of fact, Supreme Court denied defendants' motions for summary judgment. Defendants now appeal. We affirm.
"On a motion for summary judgment, the movant must establish its prima facie entitlement to judgment as a matter of law by presenting competent evidence that demonstrates the absence of any material issue of fact. Only when the movant satisfies its obligation does the burden shift to the nonmovant to present evidence demonstrating the existence of a triable issue of fact. In considering applications of this nature, courts must focus on issue finding rather than issue determination, and deny the drastic remedy of summary judgment if there is any doubt as to whether a material factual issue exists or if such an issue is even arguable" (Lacasse v Sorbello, 121 AD3d 1241, 1241-1242 [2014] [internal quotation marks, brackets and citations omitted]; see De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]; McFadden v State of New York, 138 AD3d 1167, 1167 [2016], appeal dismissed 28 NY3d 947 [2016]). When we conduct this analysis, "the facts must be viewed in the light most favorable to the nonmoving party" (Justinian Capital SPC v WestLB AG, N.Y. Branch, 28 NY3d 160, 172 [2016]; see Red Zone LLC v Cadwalader, Wickersham & Taft LLP, 27 NY3d 1048, 1049 [2016]).
It is well-settled that an owner or operator of an athletic field or facility "is not an insurer of the safety of its spectators" (Akins v Glens Falls City School Dist., 53 NY2d 325, 329 [1981]; see Procopio v Town of Saugerties, 20 AD3d 860, 861 [2005], lv denied 5 NY3d 716 [2005]; Rosa v County of Nassau, 153 AD2d 618, 619 [1989]) and that, under the assumption of risk doctrine, consenting "[s]pectators and bystanders . . . assume risks associated with a sporting event or activity, even at times when they are not actively watching the event" (Newcomb v Guptill Holding Corp., 31 AD3d 875, 876 [2006]; see Bukowski v Clarkson Univ., 19 NY3d 353, 356 [2012]; Procopio v Town of Saugerties, 20 AD3d at 861). However, "a plaintiff will not be deemed to have assumed the risks of reckless or intentional conduct, or concealed or unreasonably increased risks" (Hope v Holiday Mtn. Corp., 123 AD3d 1274, 1275 [2014]; see Newcomb v Guptill Holding Corp., 31 AD3d at 876). Notwithstanding a spectator's assumption of risk, an owner or occupier of land remains under a duty to exercise reasonable care under the circumstances to prevent injury to those who are present on the property (see Akins v Glens Falls City School Dist., 53 NY2d at 329; Stern v Madison Sq. Garden Corp., 226 AD2d 444, 445 [1996]; Rosa v County of Nassau, 153 AD2d at 619; Gilchrist v City of Troy, 113 AD2d 271, 273 [1985], affd 67 NY2d 1034 [1986]). In the context of hockey rinks, "the owner's duty owed to spectators is discharged by providing screening around the area behind the hockey goals, where the danger of being struck by a puck is the greatest, as long as the screening is of sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire to view the game from behind such screening" (Gilchrist v City of Troy, 113 AD2d at 273-274; Stern v Madison Sq. Garden Corp., 226 AD2d at 445).[FN2]
In support of their motions for summary judgment, defendants submitted, among other photographic and documentary evidence, deposition testimony describing the ice rink's safety features, as well as the details of the incident. The deposition testimony of the board president of Saratoga Youth Hockey reflects that, at the time of the incident, two separate hockey practices were ongoing, and, to accommodate this, the hockey goals were set up in a cross-rink fashion to allow both practices to use the hockey rink at the same time. Thus, the goals were repositioned across the width of the ice rink instead of at the ends of the rink where they are normally situated. He stated that the goal in question was three or four feet away from the dasher board door area and that the area where the hockey puck left the ice did not have safety netting. He explained, however, that Vernon Rink is entirely surrounded by 4- foot 7-inch dasher boards in addition to plexiglass panels atop the dasher boards. On the sides of the rink, lower three-foot plexiglass panels are atop the dasher boards, and higher six- foot plexiglass panels are atop the dasher boards at the ends of the rink where the hockey goals are normally positioned.
The administrative director of recreation for the City of Saratoga Springs testified that, although there was no protective netting along the sides of the rink, there was protective netting in place behind both ends of the ice where the hockey goals are normally located. As to the incident, a collegiate hockey player who was volunteering at the practice at the time of the incident testified that he struck a hockey puck with his stick to perform a wrist shot toward one of the goals positioned along the side of the rink, which resulted in the puck accidentally sailing over the goal and plexiglass where the door to get on the ice is located and striking the child. Just prior to the puck striking the child in the head, she had been a spectator at the practice and, at the moment of the incident, she was walking down a ramp on the side of the rink behind the area where the at-issue goal was located. The volunteer explained that, although the goals were repositioned in a cross-ice manner spanning the width of the rink, no one instructed him not to take shots at the goals. Inasmuch as the foregoing evidence establishes that the child had assumed the risks of being a spectator at the hockey practice and that protective screening was in place around the area where the goals are typically located at the ends of the ice rink, we find that defendants' proof was sufficient to meet their burden of establishing prima facie entitlement to summary judgment (see Bukowski v Clarkson Univ., 19 NY3d at 356; Procopio v Town of Saugerties, 20 AD3d at 861; Gilchrist v City of Troy, 113 AD3d at 274; see also Sciarrotta v Global Spectrum, 194 NJ 345, 355-360 [2008]).
In opposition to defendants' motion for summary judgment, plaintiffs submitted, among other things, an affidavit from plaintiffs' expert, an engineer with extensive experience in ice rink design, construction and management. Citing to various publications and Canadian safety standards for ice rink arenas, the engineer attested that the barrier system at Vernon Rink failed to comply with industry standards utilized to protect spectators and nonparticipants. In particular, the engineer opined that placement of the hockey goals in a cross-ice fashion on the sides of the rink and "directly in front of an area of the rink with a significant gap in the protective screening[] created the significant likelihood that a puck traveling at high velocity would leave the playing surface, placing spectators . . . in danger of injury." The engineer opined that, by repositioning the goals along the sides of the rink, defendants created a potential trajectory for hockey pucks not reasonably expected into the area where the child used the ramp to exit the spectators' seating, and that spectators, including the child, were unreasonably exposed to errant shots in the area behind where the goals were placed. In our view, plaintiffs' proof demonstrating that defendants' repositioning of the hockey goals along the less protected sides of the rink — "where the danger of being struck by a puck is greatest" (Gilchrist v City of Troy, 113 AD3d at 274; see Akins v Glens Falls City School Dist., 53 NY2d at 331; see also Schneider v American Hockey And Ice Skating Center, Inc., 342 NJ Super 527, 534 [2001] [recognizing that the prevailing rule is that a sports facility operator's duty of care includes providing "protection [*3]for spectators in the most dangerous section of the stands" and that this "duty ordinarily may be satisfied by the operator providing screened seats . . . behind the goals in hockey" (internal quotation marks omitted)], cert denied 170 NJ 387 [2001]) — was sufficient to show the existence of a triable issue of fact as to whether defendants satisfied their reasonable duty of care owed to the child walking down the ramp behind the repositioned goal. Accordingly, Supreme Court properly denied defendants' motions for summary judgment dismissing the complaint. Defendants' remaining contentions have been examined and found to be without merit.
Egan Jr., J.P., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: The City of Saratoga Springs owns and operates Vernon Rink, and Saratoga Youth Hockey, Inc. rented Vernon Rink at the time of the incident.

Footnote 2: The Court of Appeals has not specifically addressed whether the scope of an owner's reasonable duty of care owed to spectators at a hockey rink requires additional netting or shielding around the entire perimeter of the rink (compare Gilchrist v City of Troy, 67 NY2d 1034, 1035 [1986], with Sciarrotta v Global Spectrum, 194 NJ 345, 355-360 [2008]).