Hankey v Ogdensburg City Sch. Dist. (2025 NY Slip Op 00253)

Hankey v Ogdensburg City Sch. Dist.

2025 NY Slip Op 00253

Decided on January 16, 2025

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 16, 2025

CV-23-1970

[*1]Brandon M. Hankey et al., Respondents,
v
Ogdensburg City School District, Appellant.

Calendar Date:December 11, 2024

Before: Garry, P.J., Lynch, Fisher, Powers and Mackey, JJ.

Fischer, Bessette, Muldowney & McArdle, LLP, Malone (Robert R. Lawyer III of counsel), for appellant.
Smith Sovik Kendrick & Sugnet PC, Syracuse (Karen G. Felter of counsel), for respondents.

Garry, P.J.
Appeal from an order of the Supreme Court (Mary M. Farley, J.), entered October 6, 2023 in St. Lawrence County, which denied defendant's motion for summary judgment dismissing the complaint.
Plaintiff Brandon M. Hankey was allegedly injured by an errant hockey puck while making a food delivery at a high school sporting facility. He and his spouse, derivatively, commenced this negligence action against defendant, which owns and operates the school. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint, asserting that Hankey assumed the risk of injury, that defendant adequately supervised its students and provided adequate protection for its spectators and that the accident was not foreseeable. Supreme Court denied the motion in full, and defendant appeals.
We affirm. "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). When considering such a motion, courts must view the evidence in the light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).
In support of its motion, defendant primarily relies upon the deposition testimony of Hankey and several school officials. That testimony reveals that, on the day of the incident, Hankey, then a delivery driver for a wholesale food distributor, was delivering a large quantity of pies to the subject school for an annual Thanksgiving fundraiser. The delivery was to be made to the school's indoor sporting facility, known as the Golden Dome. On the date in question, the Dome was set up as an ice hockey rink for the season. Hankey had never made a delivery to the school before, and he had never been to the Dome. Upon his arrival, Hankey was greeted by a maintenance worker, who instructed him to bring the pies inside and opened a roll top door at the rear of the building so that Hankey could enter with a pallet. That door was located on the long side of the ice rink. The maintenance worker then further directed Hankey to drop his delivery in a specified location approximately 25 to 30 feet from where Hankey entered the building and 10 feet off the dasher boards at mid-ice; at that location, the plexiglass surrounding the rink was at its lowest point and there was no protective netting. Hankey noticed that students were "on the ice" at the time, "skating around," but he did not notice any students playing hockey prior to being hit by the puck.
The maintenance worker explained that what Hankey observed was a high school gym class, which the maintenance worker knew took place in the facility every day and, on the day in question, included hockey. The class was comprised of approximately 23 students who were permitted to engage in one of four activities[*2]: walking laps off ice around the rink, ice skating, broomball [FN1] or certain hockey skills. A substitute teacher with over 30 years of physical education teaching experience was supervising the class, stationed in a penalty box on the opposite side of the rink from where Hankey was making his delivery. The teacher testified that she was scanning the class from the penalty box and calling out broomball infractions at the time of the incident. She had instructed the approximately four students who elected to participate in hockey skills that they were permitted to work on stick handling, passing and light shots on goal, one of which was set up in the standard location. She further instructed the students that they were not permitted to take slapshots and that she did not "want to hear anything hit off the boards."
Approximately five minutes into offloading pies, Hankey heard what he believed to be a hockey puck hit off a goalpost, almost immediately after which he was hit on the side of his head with a puck. The maintenance worker, standing with Hankey, testified that he saw something [FN2] coming at them out of the corner of his eye and ducked, but he did not witness Hankey get hit, nor did anyone else in the facility. According to Hankey, a student then skated over to retrieve the puck, which Hankey tossed back before completing his delivery and reporting the incident to, among others, the school official who later arrived to sign for the delivery. The gym teacher, who was only informed of the alleged injury after the class had ended, testified that she did not observe the alleged injury, did not see a puck go out of the rink, did not hear any slapshots and did not have to speak to anyone about pucks hitting off the boards during that class. However, when she had seen pucks go out of the rink in the past, it had been the result of slapshots or pucks hitting off the goal post. She also testified that she had not been paying much attention to Hankey. It does not appear that the students were asked about the incident.
Initially, Supreme Court properly rejected defendant's invocation of the primary assumption of risk doctrine. "[P]rimary assumption of the risk applies when a consenting participant in a qualified activity is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks" (Custodi v Town of Amherst, 20 NY3d 83, 88 [2012] [internal quotation marks and citations omitted]; accord Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 95 [2023]). Although primary assumption of risk extends to spectators and bystanders of such qualified activities (see Smero v City of Saratoga Springs, 160 AD3d 1169, 1170 [3d Dept 2018]; Newcomb v Guptill Holding Corp., 31 AD3d 875, 876 [3d Dept 2006]), any such engagement must still have been consenting and voluntary for the doctrine to apply. Here, the undisputed evidence reveals that Hankey was not observing a sporting event/activity — either actively (see Savage v Brown, 128 [*3]AD3d 1343, 1344 [4th Dept 2015]) or passively (see Spiteri v Bisson, 134 AD3d 799, 800-801 [2d Dept 2015]) — at the time of the subject incident but was instead performing a job function for a nonparty. He had never been to the subject school or facility before, and he was escorted into the building through a rear maintenance entrance. Not only was he instructed, by an agent of defendant, where to enter the building, Hankey was instructed exactly where to place his delivery (compare M.F. v Jericho Union Free Sch. Dist., 172 AD3d 1056, 1056-1058 [2d Dept 2019]). At that location, within minutes and before he could complete his delivery, he sustained the alleged injury. Regardless of Hankey's alleged awareness of the multi-faceted activity at issue here, the commonly appreciated risks thereof or whether those risks were concealed or enhanced under the circumstances (see Spillane v Hofstra Univ., 219 AD3d 774, 776-777 [2d Dept 2023]), he cannot be said to have voluntarily placed himself in close proximity to the subject activity, and he was therefore neither a spectator nor a bystander thereof within the meaning of the doctrine (see Hae Seng Kim v Flushing YMCA, 64 AD3d 679, 679-680 [2d Dept 2009]; compare Austin v Buffalo Bills, Inc., 93 AD3d 1232, 1233 [4th Dept 2012]; Sutfin v Scheuer, 145 AD2d 946, 947-948 [4th Dept 1988], affd 74 NY2d 697 [1989]).
Next, contrary to Supreme Court's holding, the duty to be imposed here is not a question of fact but a legal issue for the courts to resolve (see Eiseman v State of New York, 70 NY2d 175, 187 [1987]). "Landowners in general have a duty to act in a reasonable manner to prevent harm to those on their property" (D'Amico v Christie, 71 NY2d 76, 85 [1987], citing Basso v Miller, 40 NY2d 233, 241 [1976]; see Goga v Binghamton City School Dist., 302 AD2d 650, 651 [3d Dept 2003]). That duty can include "a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control" (D'Amico v Christie, 71 NY2d at 85; see Lathers v Denero, 155 AD3d 1174, 1175 [3d Dept 2017]; see e.g. Pendulik v East Hampton Union Free School Dist., 17 AD3d 334, 335 [2d Dept 2005]; Morbillo v Board of Educ. of Mt. Sinai School Dist., 269 AD2d 506, 507 [2d Dept 2000]).[FN3]
Defendant owed such a duty to Hankey, and defendant's own submissions reveal triable issues of fact as to whether it breached that duty. Defendant, by way of its agent, was aware of the subject delivery, the presence of a gym class in the facility at the time of the delivery and the fact that the class was engaging in hockey skills, among other activities. With this knowledge, the maintenance worker escorted Hankey into and through the facility to a location at mid-ice, where protections for those outside of the rink were the lowest, and instructed him to unload his delivery at that location. The gym teacher, also aware of Hankey, made no effort to further instruct her [*4]students or to increase her monitoring of those hitting hockey pucks. There are thus issues of fact as to whether the manner in which the subject delivery was handled was negligent and whether school personnel adequately monitored the activities in the facility so as to prevent foreseeable injuries to guests on the premises, such as Hankey (see Pendulik v East Hampton Union Free School Dist., 17 AD3d at 335). Additionally, in view of the fact that the activity at issue was not an ordinary hockey game and that Hankey was not a spectator who chose to occupy the location where he was allegedly injured, and considering that the only evidence regarding safety features were in the form of estimates from the maintenance worker, we further find that defendant has failed to demonstrate the absence of triable issues of fact as to whether the protections surrounding the rink were reasonable under the circumstances (compare Smero v City of Saratoga Springs, 160 AD3d at 1171-1172; Gilchrist v City of Troy, 113 AD2d 271, 274-275 [3d Dept 1985], affd 67 NY2d 1034 [1986]; see generally Akins v Glens Falls City School Dist., 53 NY2d 325, 331 [1981]).
As for foreseeability, defendant's submissions demonstrate that the gym teacher had instructed the students practicing hockey skills on certain permissible and impermissible behavior while engaged in the activity and that the teacher was aware that the impermissible behavior could result in pucks leaving the rink. Contrary to defendant's contention, we find that the circumstances under which Hankey was injured by expressly anticipated conduct to be distinguishable from those when a spontaneous accident occurs during a sport or game in progress (compare Spaulding v Chenango Val. Cent. School Dist., 68 AD3d 1227, 1229 [3d Dept 2009], lv denied 14 NY3d 707 [2010]; Bellinger v Ballston Spa Cent. School Dist., 57 AD3d 1296, 1297-1298 [3d Dept 2008], lv denied 12 NY3d 704 [2009]). We therefore further find that defendant has failed to eliminate all triable issues of fact as to proximate cause (see Grogan v Simon Prop. Group, Inc., 192 AD3d 769, 772 [2d Dept 2021]). Finally, we reject the argument that a finding of proximate cause here would require pure speculation (see Gayle v City of New York, 92 NY2d 936, 937 [1998]; Weichsel v State of New York, 231 AD3d 1459, 1463 [3d Dept 2024]). Supreme Court therefore properly denied defendant's motion.
Lynch, Fisher, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Broomball is a team sport in which players use a broom handle type stick to maneuver a ball up and down the ice while wearing shoes, not skates.

Footnote 2: In an incident report, submitted in opposition to defendant's motion, the maintenance worker indicated that what he saw was in fact a hockey puck.

Footnote 3: Plaintiffs are correct that, in the absence of any allegation on their part of a special duty owed to Hankey, the duty of care relied upon by defendant on appeal, concerning a school district's performance of its governmental function to supervise its students, is inapposite (see Vitale v City of New York, 60 NY2d 861, 863 [1983]; Destefano v City of New York, 149 AD3d 696, 697 [2d Dept 2017]; Goga v Binghamton City School Dist., 302 AD2d at 651).